## ADAMS et al. v. WEST LUMBER CO. et al.

(Court of Civil Appeals of Texas. Texarkana. Dec. 10, 1913. Rehearing Denied Jan. 8, 1914.)

1. RECORDS (§ 19*)—PUBLIC RECORDS.

Public records are only constructive notice of what one would discover by examining the recorded instruments, and not of what he might ascertain by following an inquiry suggested by inspecting them.

[Ed. Note.—For other cases, see Records, Cent. Dig. § 44; Dec. Dig. § 19.*]

2. RECORDS (§ 19*)—PUBLIC RECORDS — TAX OFFICER.

Entries in the abstract in a tax assessor's office, showing that a certain patent patented to J. E. A. was rendered for taxation at a certain value in the year 1880 by M. M. A., and in 1881 by Mrs. M. N. A., were sufficient to charge the county attorney, when suing in 1900 to foreclose a tax lien on the land, with knowledge that Mrs. M. N. A. had an interest in the land at the time the suit was brought, unless further inquiry showed that she had parted with it; and hence a judgment against unknown owners, selling the land for taxes, would not bind her.

[Ed. Note.—For other cases, see Records, Cent. Dig. § 44; Dec. Dig. § 19.*]

3. HUSBAND AND WIFE (§ 252*)—COMMUNITY ESTATE—WHAT CONSTITUTES.

Property belonged to the community, though the husband was a mere settler under a pre-emption claim, and occupancy had not been completed at the death of his wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 895; Dec. Dig. § 252.*]

4. TAXATION (§ 648*) — FORECLOSURE OF TAX LIENS—PARTIES.

If a valid judgment may be rendered in a proceeding to foreclose a tax lien under Rev. St. 1895, art. 5232g, in the absence of necessary parties, those who are actually parties are bound thereby, while those who are not parties are not bound; the statute adding nothing to the general rules of law as to parties.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1316; Dec. Dig. § 648.*]

5. TAXATION (§ 648*)—SALE—PERSONS BOUND BY JUDGMENT.

A proceeding for collecting delinquent taxes is an action in rem against the property, and a judgment foreclosing the tax lien is good as against parties in interest joined in the suit, and parties not joined are not bound by such judgment.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1316; Dec. Dig. § 648.*]

Appeal from District Court, Trinity County; S. W. Dean, Judge.

Action by A. J. Adams and others against the West Lumber Company and others. From a judgment for defendants, plaintiffs appeal. Reversed in part, and remanded for new trial.

---

King & King, of Nacogdoches, Crow & Phillips, of Groveton, and D. M. Short & Sons, of Center, for appellants. Hill & Hill, of Livingston, Hayne Nelms, and J. A. Platt, both of Groveton, Baker, Botts, Parker & Garwood, of Houston, Dean, Humphrey & Powell, of Huntsville, and B. F. Bean, of Livingston, for appellees.

HODGES, J. This is an action to recover the title and possession of 320 acres of land situated in Trinity county known as the J. E. Adams survey, and damages for the value of timber cut and removed therefrom. The suit was instituted by A. J. Adams, a son of the original grantee, joined by the minor children of one of his deceased sisters, who sue by their father, as next friend. All of the plaintiffs in the suit are claiming by inheritance from J. E. Adams. A. J. Adams also claims in part under a conveyance from his mother executed in 1909.

The testimony shows that in 1849 John E. Adams and his first wife were residing upon the land involved in this suit; that the first wife died about 1850, leaving two children. Shortly thereafter Adams married a second wife, who lived only about a year, and died, leaving no children. In 1855 he married a third wife, by whom he had eight children, one of whom, it is shown, died in early life. In 1861, after continuous possession by Adams and his wives from 1849, a patent was issued to him by the state of Texas. In 1870 or 1872 Adams died, while still residing on the place. After his death his widow, Mahulda Adams, now Mahulda Taylor, continued to reside upon the premises with the children till about 1875. She then moved to another place in the same county, and for five years thereafter rented the Adams place to other parties. After that time the land seems to have remained unoccupied till after its sale for taxes a number of years thereafter. In 1893 J. E. Adams, Jr., a son of Mrs. Mahulda Adams and J. E. Adams, Sr., conveyed to his mother all of his interest in his father's estate, both personal and real. This deed appears to have been filed for record on the same day it was executed. It will be referred to later in discussing one of the issues involved in this appeal. In 1900 a judgment was rendered in favor of the state, foreclosing a tax lien on the 320 acres of land in a suit theretofore instituted by the county attorney against unknown owners. The land was thereafter sold, and purchased by parties under whom the appellee in this suit claims title. At the conclusion of the testimony the court instructed a verdict for the defendants.

Practically the only question presented in this appeal is that which involves the legal effect that should be given to the judgment foreclosing the tax lien against the parties plaintiff in this suit. No complaint is made that the proceedings were in any particular irregular, except in the failure to sue the owners by their proper names, and to serve them with personal notice. The attack on that judgment is merely an effort to evade its terms by showing that the appellants were not in law parties to that suit—that they were not "unknown owners," within the meaning of the statute. They rely upon the rule announced by the Supreme Court in Scales v. Wren, 103 Tex. 304, 127 S. W. 164. In support of its title the appellee offered in evidence the judgment and order of sale in the tax suit and the sheriff's deed made thereafter. All of these were objected to by the appellants, substantially because they were not parties to the tax suit. As supporting that contention appellants rely upon the following grounds: (1) That they, as the owners of the land, were known to the county attorney when he made the affidavit as to basis of the suit against the unknown owners; (2) that the records in the office of the county clerk of Trinity county disclosed the names and residences of the owners of the property; (3) that the records in the office of the tax assessor of Trinity county disclosed the names of the owners who had last rendered the property for taxation, and furnished data from which the county attorney could easily have ascertained the names of the true owners at the time he filed the suit.

In disposing of the first ground, it is sufficient to say that it has no support in the evidence.

The testimony relied upon to sustain the second ground consists of the following facts, about which there appears to be no controversy: It is admitted by all parties to this suit that the deed records of Trinity county were destroyed by fire in 1872. The original patent issued to J. E. Adams in 1861 was not recorded in the office of the county clerk of Trinity county till 1910, long after the tax suit had been brought, and the judgment rendered. The deed from J. E. Adams, Jr., executed in 1893, conveying his interest in his father's estate, is the only instrument relating to this tract of land which was of record in the office of the county clerk of Trinity county at the time the tax suit was instituted. The granting clause of that instrument is as follows: "Have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said M. N. Taylor, of the county of Trinity in the state of Texas, all of my right, title, and claim in and to the estate of J. E. Adams, deceased, to both real and personal property, to have and to hold," etc. The deed contains no other description by which to ascertain the property to which it refers. The question, then, is, Did the records of the county clerk's office as they stood in 1900 and prior thereto furnish notice to the county attorney of Trinity county as to who were the owners of the land in controversy? Had he examined those records, he would have found only the deed above referred to, and that did not identify

the land to which it related in such a manner that he could have located it.

[1] Public records are constructive notice of what one would ascertain by examining the recorded instruments. They are not constructive notice of what one might ascertain by pursuing an inquiry suggested by their inspection. Neyland v. Texas Yellow Pine Lumber Co., 26 Tex. Civ. App. 417, 64 S. W. 696; Taylor v. Harrison, 47 Tex. 454, 26 Am. Rep. 304; White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875; McLouth v. Hurt, 51 Tex. 115; Cooke v. Bremond, 27 Tex. 457, 86 Am. Dec. 626. It is only when the evidence shows that they have been actually examined, and their contents become known, that a person will be charged with notice of these facts concerning which they may put him upon inquiry. Whether that rule applies to the several prosecuting officers whose duty it is to institute tax suits need not to be here determined. For, had the county attorney of Trinity county examined the records of the county clerk's office, he would have found no patent from the state vesting any title to the premises in J. E. Adams, Sr., nor any other evidence that Adams ever owned the land. But at most a discovery of this deed to Mrs. Adams would only have disclosed her ownership, and, in view of the disposition which we make of the next ground urged by the appellants, a further discussion of this proposition is rendered unnecessary.

[2] As to the third ground, the abstract from the tax assessor's office showed the following:

Patent No. 303, Vol. 34; to whom patented, J. E. Adams. Month, July. Year, 1861.

| Year. | By whom rendered. | Acres. | Value. |
| --- | --- | --- | --- |
| 1880 | M. M. Adams | 320 | $160. |
| 1881 | Mrs. M. N. Adams | 320 | $160. |

The remaining entries in the assessor's abstract down to and including the year 1910, when this suit was brought, show that this land was unrendered from 1882 to 1900, and that it was rendered thereafter by parties who claimed under the tax sale. Whether the assessor's records showed that the land had not been assessed at all, or had been assessed against unknown owners during the interval between 1882 and 1900, or had been assessed against the real owners, does not appear from the record before us.

An examination of the assessor's abstract would have disclosed to the county attorney that the land had been rendered for taxation by Mrs. Adams. This was notice that she was either the sole owner, or had an interest in the property at that time. He then had no right to assume, without inquiry, that she had parted with that interest at the time he began his preparation for the tax suit. Had he looked into the record of deeds and found there a connected chain of title in Mrs. Adams, the fact that her deed bore date during the year 1881 would not have justified him in assuming that she was not

still the owner of the land. If, under such a state of facts, he had brought a suit against unknown owners, under the ruling announced in Scales v. Wren, the judgment would not have been binding on Mrs. Adams, for the reason that the records which he was required to investigate would have furnished him the name of the owner, although her deed was an old one. We think that the same effect should be given to the records of the assessor's office of which the county attorney was equally bound to take notice in such proceedings.

[3] It then becomes necessary to ascertain the extent of Mrs. Adams' interest in the property in order to determine the exact effect which should be given to the judgment rendered in the tax suit. As early as 1849 J. E. Adams, Sr., was occupying the premises with his first wife and children. It was apparently used as a homestead from that time till the death of Adams in 1870. Just what the nature of the claim was by which Adams occupied these premises is not made clear by the record before us. The fact that a patent was issued to him in 1861 indicates that he was there by virtue of some legal right which later ripened into a fee-simple title. If he were a mere settler under a pre-emption claim, although occupancy had not been completed at the death of his first wife, the property would nevertheless belong to the community estate of that marriage. Creamer v. Briscoe, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869. The character of the estate when the title was subsequently perfected would be determined by the nature of the incipient right.

Upon the death of the first Mrs. Adams her community interest vested in her two children, subject to the right of Adams to occupy the homestead during his lifetime. At his death the children of the first marriage had the right to demand a partition, and to have the interest of their mother set apart to them. In one-third of the remaining half the last wife had a life estate, with the further right to the homestead during her life. It thus appears that, at the time she rendered the property for taxation, Mrs. Adams had only a life interest in a portion of it.

[4, 5] Article 5232g of the Revised Statutes of 1895 requires that "the proper persons shall be made parties defendant in such suits and shall be served with process and other proceedings had therein as provided by law for suits of like character in the district courts of this state." These provisions add nothing to the general rules of law to be observed in the making of parties in litigation where property rights are to be disposed of and settled. If the proceeding is one in which a valid judgment may be rendered in the absence of some of the necessary parties, those who are parties are bound, while those who are not parties are not bound by the judgment rendered. In suits for the collection of delinquent taxes, the proceeding is an

action in rem against the property only. Stone v. Tilley, 100 Tex. 487, 101 S. W. 201, 10 L. R. A. (N. S.) 678, 123 Am. St. Rep. 819, 15 Ann. Cas. 524. We see no good reason for holding that a judgment rendered in such a suit where all the parties in interest are not joined is not good as to those who are joined. While it is true that the law contemplates that all those who own an interest in the land shall be made parties, that requirement is exacted merely for the purpose of concluding by one judgment all those who have any interest. It is not prescribed as a necessary condition to the rendition of a valid judgment. In any event, and as to any of the part owners who may be sued, the result is the same as in any other suits to foreclose liens where different parties have an interest in the subject-matter of the litigation. Blair v. G. S. Co., 54 Tex. Civ. App. 443, 118 S. W. 608.

The fact that Mrs. Adams was in legal effect a known owner at the time this tax suit was filed, and that she was not actually or constructively a party to that proceeding, exempts her and the interest owned by her at the time the suit was filed from the terms of the judgment. And that judgment was not admissible in evidence for the purpose of showing that the purchasers had acquired her interest at the tax sale. The records of the assessor's office, however, did not disclose the names of the other owners of the property. The fact that Mrs. Adams may have been known as an owner does not imply that the others were also known. Had the county attorney filed his suit against Mrs. Adams alone, a judgment rendered foreclosing the state's lien would have affected her interest only. While the state's lien is superior to all other rights, the purchaser at the tax sale takes only the interest of those who are actually or constructively made parties to the suit.

It follows from what we have said that the court properly admitted in evidence the judgment, order of sale, and tax deed offered by the appellee in this case, but erred in instructing a general verdict for the defendant below. Our conclusion is that all of the joint owners of the property except Mrs. Adams were unknown owners, and were concluded by the judgment rendered in the tax suit, and for that reason the minor plaintiffs were not entitled to recover. But we also conclude that the appellant A. J. Adams is entitled to recover to the extent of the interest which he acquired from his mother prior to the institution of this suit. The extent of that interest we are unable to determine from

162 S.W.—62

the evidence before us, nor are we in a position to say whether or not he would be legally entitled to recover any sum as damages for the timber which the appellee had cut and removed from the land. Those are questions which must be passed upon in another trial, where the evidence may be made more satisfactory.

### On Motion for Rehearing.

Appellees insist that the records of the assessor's office should not be given the same legal effect as to constructive notice which is attributed to the records in the office of the county clerk; that there is a general statute which makes the records in the latter office constructive notice of the contents of the instruments there registered to all persons, while no such effect is by law given to the records of the assessor's office. In Scales v. Wren, referred to in the original opinion, Chief Justice Gaines quotes as follows from the act of 1897 (Acts 25th Leg. c. 103, § 6): "The county collector, county clerk and county assessor shall furnish all affidavits, certified copies of the records of their respective offices, and such other evidence as may be in their possession by virtue of such office as may be applied for by the county attorney." He then adds: "Now, it is plain that, if the county attorney had called upon these officers, as it was his duty to do, the county clerk would have furnished him information which would have apprised him that the owner of the land was not unknown." It is thus made clear that the Supreme Court relied upon the statute quoted for saying that the records of the county clerk's office were constructive notice in such instances to the county attorney, and not upon the general law relating to recorded instruments. It may be said here that, had the county attorney called upon the assessor for these data, as it was his duty to do, that officer would have furnished him with information apprising him of the name of one of the owners of the land, Mrs. Adams. We do not wish to be understood as holding that A. J. Adams has an interest in the land that may be recovered upon another trial, for, if Mrs. Adams parted with her interest before she executed the deed to him, she conveyed him nothing. The evidence as to her having sold the land in controversy is conflicting, and this appeal is from an instructed verdict. The testimony upon that issue, at least, presented a question of fact which should be submitted to the jury upon another trial.

Both the motion of the appellees and of the appellants are overruled.