Gary JORDAN and Bill Jordan, Individually and as Independent Executors of the Estate of Leonard C. Jordan, Deceased, Appellants,

v.

Vincent BUSTAMANTE, Appellee.

No. 14–03–00633–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 25, 2005.

Rehearing Overruled March 17, 2005.

30

Stephen N. Riner, Shawn Russel Casey, Houston, for Appellants.

Richard Petronella, Houston, for Appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

This is a double appeal involving two tracts of land. Gary Jordan and Bill Jordan, Individually and as Independent Executors of the Estate of Leonard C. Jordan, Deceased (collectively, the "Jordans"), appeal the trial court's final judgment of April 28, 2003, awarding Vincent Bustamante ("Bustamante") a 155–acre tract of land. Bustamante appeals the same judgment awarding the Jordans a 29–acre tract of land. We affirm, in part, and reverse and remand, in part.

## BACKGROUND

### Procedural History: 155 Acres

On May 8, 1992, Cypress–Fairbanks Independent School District filed suit against the Jordans for the collection of delinquent ad valorem taxes on a 155–acre tract in the 295th District Court (the "first tax suit"). On December 1, 1993, the 295th District Court signed an agreed judgment in favor of Cypress–Fairbanks and Harris County (Intervenor) against the Jordans for delinquent real estate taxes on the 155 acres and provided for an order of sale. On January 24, 1995, the Harris County District Clerk issued an "alias" order of sale, and on April 4, 1995, Cypress–Fairbanks purchased the 155 acres at a constable's sale held pursuant to the order of sale. On May 9, 1995, the constable's deed to Cypress–Fairbanks was recorded in the Harris County real property records. On July 14, 1997, Cypress–Fairbanks sold the 155 acres to Bustamante for $111,024.36 in cash. Bustamante received a tax resale deed, which was recorded in the Harris County real property records on September 24, 1997.

### Procedural History: 29 Acres

On November 16, 1995, a tax suit was filed by Cypress–Fairbanks against the Jordans on a 29–acre tract in the 157th District Court (the "second tax suit"). On June 26, 1997, the court signed a default judgment in favor of Cypress–Fairbanks and the Intervenors—Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, Harris County Hospital District, and Harris

County Emergency Service District No. 9—on the 29 acres. On December 5, 1997, Cypress Fairbanks assigned the judgment to Bustamante's wife, Elaine Paleologo.

On August 11, 1998, the Harris County District Clerk issued an order of sale, and on November 3, 1998, Bustamante purchased the 29 acres $106,129.00 in cash at a constable's sale held pursuant to the order of sale. On January 14, 1999, the constable's deed to Bustamante on the 29 acres was recorded in the Harris County real property records.

Excess proceeds from the sale of the 29 acres were deposited into the registry of the court. On January 21, 1999, the Jordans moved to withdraw the $98,000.15 in excess proceeds. On January 28, 1999, the Jordans moved to set aside the tax sale of the 29 acres to Cypress–Fairbanks on the ground that such sale was void because the lienholders—the Internal Revenue Service ("IRS") and the State—were not joined in the tax suit, and further sought subrogation to the tax liens and the return of any excess funds.[1]

On March 1, 1999, the IRS filed a disclaimer of interest in the 29 acres, while on March 11, 1999, the State of Texas claimed the excess proceeds. The Tax Master recommended that the State be awarded the excess proceeds and, accordingly, on June 14, 1999, the trial court signed an order disbursing the excess funds to the State.

### Current Suit on 155 and 29 Acres

On April 13, 1999, Bustamante filed suit against the Jordans, Cypress–Fairbanks, Harris County, and the State seeking, among other relief, the removal of the cloud on his title to the 29 acres created by a lien previously filed by the State for unpaid taxes. On June 16, 1999, the Jordans filed a counterclaim expanding the dispute to include the 155 acres, in addition to the 29 acres. The Jordans requested that the tax sales to both the 29 and 155 acres be set aside because the lienholders—the State and the IRS—were not parties to the tax suits.

On April 26, 2000, trial commenced against the Jordans on both the 29 and 155 acres.[2] Bustamante announced to the trial court that he wanted to abandon the following sentence in his first amended petition: "In addition, Bustamante seeks a declaration that his title and right to possession of the property is superior to all of the defendants." The Jordans filed a brief in support of their proposed findings of fact and conclusions of law arguing that Bustamante had abandoned his only viable cause of action by which he could recover the property, *i.e.*, trespass to try title.

On July 24, 2000, the trial court signed the judgment, awarding Bustamante title to and possession of both the 29 acres and 155 acres. However, Bustamante filed a motion for new trial in which he pointed out that the Jordans had argued, in light of his abandoning the above quoted sentence from his first amended petition, that (1) his case was a trespass to try title action, (2) trespass to try title was his

1. On January 3, 1989, a State tax lien in the amount of $599,278.70 was recorded in the Harris County real property records. The State, however, was not made a party to the either tax suit. On May 5, 1995, a notice of federal tax lien in the amount of $4,210,113.49 against the Leonard C. Jordan Estate was recorded in the Harris County real property records. On August 26, 1996, another notice of federal tax lien in the amount of $4,210,113.48 against the Leonard C. Jordan Estate was recorded in the Harris County real property records. The IRS was not made a party to either tax suit.

2. Bustamante nonsuited the State prior to trial on April 7, 2000. Bustamante never served any of the taxing authorities with his suit.

exclusive remedy, and (3) he did not prove his trespass to try title action. Although Bustamante did not agree with the Jordans, he was concerned they would appeal and title to the property would remain clouded during the pendency of the appeal. Bustamante requested the trial court grant a new trial to allow him to amend his pleadings to allege an action in trespass to try title, as well as actions under the Texas Tax Code and the Declaratory Judgment Act. On September 5, 2000, the trial court granted Bustamante's motion for new trial and awarded $7,897.40 in attorney fees to the Jordans.

On October 8, 2001, Bustamante non-suited his case as the plaintiff against the Jordans. Bustamante also filed a motion to realign the parties in which he asserted that because he had nonsuited the Jordans, and the Jordans were the only parties with affirmative claims by virtue of their third amended counterclaim, they should be the plaintiffs and Bustamante the defendant. Bustamante filed an amended answer asserting a general denial, a plea of "not guilty," and affirmative defenses to the Jordans' counterclaim. On August 9, 2002, the trial court granted Bustamante's motion to realign the parties, ordering that the Jordans were the plaintiffs and that Bustamante was the defendant.

The Jordans moved for summary judgment on both the 29 and 155 acres on their trespass to try title action asserting that they had proved a regular chain of conveyances from the sovereignty. The Jordans also argued that Bustamante had abandoned his trespass to try title action and his claim to superior title and right of possession, the tax sales were void because the lienholders were not joined in the tax suits, and they had standing to complain about the failure to join the lienholders in the tax suits.

On February 17, 2003, with respect to the 29 acres, the trial court granted the Jordans' motion for summary judgment, setting aside the tax foreclosure sale on the 29 acres and ordering that any lien in existence at the time of the foreclosure sale would remain a burden on the property to the extent such lien had not been satisfied. With respect to the 155 acres, the trial court denied the Jordans' motion for summary judgment and conducted a bench trial, after which it awarded Bustamante the 155 acres. On April 28, 2003, trial court entered a final judgment on the 29 and 155 acres.

### THE JORDANS' APPEAL OF THE AWARD OF 155 ACRES TO BUSTAMANTE

#### *Abandonment of Cause of Action for Trespass to Try Title*

In their appeal, the Jordans claim the trial court abused its discretion in awarding Bustamante the 155 acres. The Jordans first argue that when Bustamante voluntarily abandoned his trespass to try title action during the first trial pursuant to Rule 165 of the Rules of Civil Procedure, he abandoned the only available remedy by which he could obtain title to the 155 acres. *See* TEX.R. CIV. P. 165 ("A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried.").

 "A trespass to try title action is the method for determining title to lands, tenements, or other real property." TEX. PROP.CODE ANN. § 22.001(a) (Vernon 2000); *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex.1994). It is the exclusive remedy by which to resolve competing claims to property. *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex.App.-Austin 1998, no pet.). Any suit involving a dispute over

the title to land is, in effect, an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought. *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex.App.-Eastland 2003, pet. denied); *Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex.App.-Texarkana 1991, no writ).

In his first amended petition (the "live" pleading during the first trial), Bustamante sought, among other relief, "a declaration that his title and right to possession [are] superior to all of the defendants." During the first trial, Bustamante announced to the trial court that he wanted to abandoned that sentence. The Jordans allege Bustamante, having abandoned his trespass to try title action, effectively abandoned the only cause of action he had and, therefore, the trial court should have entered judgment that Bustamante take nothing.

■ In response, Bustamante asserts that he did not file a trespass to try title action. Bustamante sought a judicial determination that "his title and right to possession [are] superior to all of the defendants." Bustamante's petition has clearly alleged a competing claim to title to the 155 acres. *See Hawk,* 107 S.W.3d at 84 (stating that any suit involving dispute over title to land is action in trespass to try title); *Jordan,* 802 S.W.2d at 883 (same). However, it appears Bustamante sought this determination in the context of a declaratory judgment action. While the Declaratory Judgment Act provides a procedural method for the construction or validity of deeds by those whose rights are affected by such instruments, the substantive rights of the parties are governed by the trespass to try title statutes. *Kennesaw Life & Acc. Ins. Co. v. Goss,* 694 S.W.2d 115, 117–18 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). Therefore, a declaratory judgment action cannot be used to adjudicate title and a trespass to try title action because section 22.01 is the exclusive remedy by which to do so. *Ely,* 959 S.W.2d at 727. For reasons addressed below, however, we need not address whether Bustamante attempted to have title to the property determined in a declaratory judgment action or whether he abandoned his trespass to try title action during the first trial to resolve the question of the 155 acres.

After the trial court awarded Bustamante title and possession to both the 29 and 155 acres during the first trial, Bustamante filed a motion for a new trial in which he pointed out that the Jordans had argued (1) his case was a trespass to try title action, (2) a trespass to try title action was his exclusive remedy, and (3) he had not proved superior title to the property. Bustamante explained he was concerned the Jordans would appeal the judgment, and title to the property would remain clouded during the pendency of the appeal. Bustamante requested that the trial court grant a new trial to allow him to amend his pleadings in order to allege an action in trespass to try title, as well as actions under the Texas Property Tax Code and the Declaratory Judgment Act. On September 5, 2000, the trial court granted Bustamante's motion for new trial.

■ Rule 165 of the Rules of Texas Civil Procedure provides that "[a] party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." TEX.R. CIV. P. 165. Rule 165 permits the abandonment of a claim or defense before, but not after, trial and entry of judgment. *Person v. Latham,* 582 S.W.2d 246, 250 (Tex.Civ.App.-Beaumont 1979, writ ref'd n.r.e.).

The Jordans assert that an abandoned cause of action cannot be revived. In support of this contention, the Jordans rely on an opinion from this court, *Goffney v. Rabson*, 56 S.W.3d 186 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). A review of our opinion in *Goffney* establishes that it does not support the proposition for which it is cited by the Jordans. In *Goffney*, the plaintiff sued her attorney for legal malpractice, breach of contract, Deceptive Trade Practices Act–Consumer Protection Act (DTPA) violations, and breach of fiduciary duty in connection with her attorney's representation of her. *Id.* at 188. Prior to trial, the plaintiff dropped her legal malpractice claim from her petition and proceeded to trial on her remaining claims with the jury finding in her favor on the claims against her attorney. *Id.* The trial court entered a final judgment in favor of the plaintiff. *Id.* The narrow issue addressed in our opinion was whether the plaintiff's breach of contract, breach of fiduciary duty, and DTPA claims were essentially legal malpractice claims. *Id.* at 190. We determined that those claims were, in fact, legal malpractice claims and held, under well-settled law, that a client cannot "divide or fracture" legal malpractice claims into additional causes of action and, therefore, the plaintiff could not recover from her attorney because she had no viable cause of action upon which to recover after she had abandoned her legal malpractice claim. *Id.*

The Jordans also rely on an opinion from the United States Court of Appeals for the Tenth Circuit, *Casto v. Arkansas–Louisiana Gas Co.*, 597 F.2d 1323 (10th Cir.1979), for the proposition that abandonment of a cause of action precludes any subsequent action for the same cause. We find *Casto* is also inapplicable to the case at hand. In *Casto*, the plaintiffs sued a gas company for damages for loss of property and loss of consortium sustained in a gas explosion in their home. *Id.* at 1324. However, prior to trial, the husband elected not to proceed on his claim for loss of consortium. *Id.* Explaining that a plaintiff may not split a single cause of action, the *Casto* court held where a plaintiff "includes multiple claims for his damages from the single tort on which the suit is based, and in silence drops one claim, *he may not, after judgment in that suit, maintain a separate second suit on that dropped claim.*" *Id.* at 1326 (emphasis added).

We recognize that abandoning a cause of action can have a res judicata effect. *See Jones v. Nightingale*, 900 S.W.2d 87, 90 (Tex.App.-San Antonio 1995, writ ref'd). In *Jones,* the plaintiff brought claims for negligence and breach of contract, but abandoned (pursuant to Rule 165) her breach of contract claim the day after the trial began. *Id.* at 88. The jury found no negligence and judgment was entered and became final. *Id.* Thereafter, the plaintiff sent a letter to the defendant threatening litigation over the previously abandoned breach of contract claim. *Id.* Rejecting the plaintiff's argument that her contract claim was not barred by res judicata because she had expressly and properly excluded it when she abandoned it pursuant to Rule 165, the San Antonio Court of Appeals explained that the plaintiff sought to recover for injuries stemming from a single occurrence under negligence and contract theories. *Id.* at 89. That situation did not occur here.

Unlike *Goffney, Casto,* and *Jones,* the trial court in this case granted a new trial, reinstating the case on the docket as if no trial had occurred and, therefore, the final judgment did not stand.[3]

---

3. *See City of San Antonio v. Dickman,* 34 Tex. 647, 650 (1870) (stating granting of new trial

Moreover, Bustamante still claimed better title to the property. On October 8, 2001, Bustamante nonsuited his case as the plaintiff against the Jordans and filed a motion to realign the parties in which he asserted that because he had nonsuited the Jordans, and the Jordans had filed a third amended counterclaim, the Jordans were the only parties with affirmative claims and, therefore, they should be the plaintiffs and Bustamante the defendant. Bustamante also filed an answer, asserting a plea of "not guilty," a general denial, and several affirmative defenses. By his general denial and his plea of "not guilty" to the Jordans' trespass to try title action, Bustamante claimed better title to the property. *See Bellaire Kirkpatrick Joint Venture v. Loots,* 826 S.W.2d 205, 209 (Tex.App.-Fort Worth 1992, writ denied)

(explaining that when title is disputed, defendant admits possession, but claims better title)[4].

■■■■■ The Jordans further allege that Bustamante's abandonment of his trespass to try title action in the first trial was a formal disclaimer of any interest in the property. A disclaimer is neither an answer nor a defensive plea; instead, it is " 'a solemn declaration, made in court, that the declarant has not title to either the whole or a portion of the property in litigation, and it is, in effect, an admission that the adverse party has a right to the property; . . .' " *Sanders v. Taylor,* 500 S.W.2d 684, 686 (Tex.Civ.App.-Fort Worth 1973, no writ) (quoting *Scanlan v. Hitchler,* 19 Tex.Civ.App. 689, 48 S.W. 762, 764 (1898, no writ)); *Haltom v. McKinley,* 64 S.W.2d 1060, 1066 (Tex.Civ.App.-Texar-

reinstates cause on docket as though no trial had been had); *Stanley v. CitiFinancial Mtge. Co., Inc.,* 121 S.W.3d 811, 816 (Tex.App.-Beaumont 2003, pet. denied) (explaining that after granting of new trial by trial court, it is as if case had never been tried); *Markowitz v. Markowitz,* 118 S.W.3d 82, 88 (Tex.App.-Houston [14th Dist.] 2003, pet. denied), *cert. denied,* — U.S. —, 125 S.Ct. 69, 160 L.Ed.2d 29 (2004) (op. on reh'g) (Seymore, J., concurring) (stating that upon granting of motion for new trial, original judgment is set aside and parties may proceed without prejudice from previous proceedings); *City of Dallas v. Ormsby,* 904 S.W.2d 707, 712 (Tex.App.-Amarillo 1995, writ denied) (stating effect of granting motion for new trial "was to wipe clean the factfinding slate"); *State Dep't of Highways & Pub. Transp. v. Ross,* 718 S.W.2d 5, 11 (Tex.App.-Tyler 1986, orig. proceeding) (stating that after granting new trial, logically any pretrial order would be obliterated); *Electrical Contracting & Maint. Co. v. Perry Distribs., Inc.,* 432 S.W.2d 543, 547 (Tex.Civ.App.-Dallas 1968, writ ref'd n.r.e.) (explaining that where judgment in first trial was set aside and new trial granted by trial court, jury findings at first trial could not form basis of judgment resulting from second trial); *De Ramirez v. Sovereign Camp, W.O.W.,* 123 S.W.2d 737, 738 (Tex.Civ.App.-El Paso 1938, no writ) (quoting *Smith v. Thornton,* 119 Tex.

344, 29 S.W.2d 314, 315 (1930)) (explaining that after granting of new trial, " 'case stands upon the docket as if it had not been tried' ").

4. Although Bustamante originally brought suit against the Jordans on the 29 acres, he did not include the 155 acres. The Jordans expanded the dispute to include the 155 acres when they filed their counterclaim. Bustamante added an affirmative claim for the 155 acres in his first amended petition. However, the Jordans' second amended counterclaim, which was their live pleading at the time of the first trial, makes no mention of the 155 acres, although their claim to the 155 acres appears again in their third amended counterclaim. The Jordans point out that when Bustamante dropped the sentence in question from his first amended petition during the first trial and, in the absence of any claim by them for 155 acres at the time of the first trial, Bustamante had no claim for title to the 155 acres. Bustamante had by his answer to the Jordans' second amended counterclaim, which only affirmatively sought title to the 29 acres, effectively asserted title to the 29 acres only, not the 155 acres. However, Bustamante's answer to the Jordans' third amended counterclaim was sufficient to assert title to the 155 acres in light of the trial court's granting a new trial.

kana 1933, writ dism'd). Thus, a defendant's disclaimer entitles the plaintiff to judgment against the defendant for all land at issue which has been disclaimed without the need to introduce evidence. *Jordan*, 802 S.W.2d at 883; *Clarady v. Bonin*, 597 S.W.2d 445, 447 (Tex.Civ.App.-Beaumont 1980, writ ref'd n.r.e.); *Williams v. Humble Oil & Ref. Co.*, 139 S.W.2d 346, 349 (Tex.Civ.App.-El Paso 1940, writ dism'd judgm't cor.). Once a disclaimer has been made, it cannot be withdrawn or retracted without the trial court's permission, subject to its discretion. *Sanders*, 500 S.W.2d at 686 (quoting *Scanlan*, 48 S.W. at 764).

On October 19, 2001, after Bustamante had nonsuited the Jordans and moved to realign the parties, the Jordans filed a fourth amended counterclaim against Bustamante in which they asserted that Bustamante had "abandoned and/or *disclaimed*"[5] his right to superior right to title and to possession of the property. Although Bustamante disagreed with the Jordans' assertion that abandoning a sentence from his first amended petition during the first trial constituted a disclaimer of his claim to superior right to title and to possession of the property, he nonetheless moved to withdraw the "alleged disclaimer." On February 17, 2003, the trial court granted Bustmante's motion. Thus, any alleged disclaimer was withdrawn with the permission of the trial court. *See Sanders*, 500 S.W.2d at 686 (stating disclaimer cannot be withdrawn without permission of trial court). The Jordans do not otherwise assert that the trial court abused its discretion.

In summary, whether or not Bustamante abandoned his trespass to try title action during the first trial is not relevant because the trial court granted his motion for new trial thereby returning the case to the position it was in had it never been tried. Thus, Bustamante still asserted superior title to the property in the Jordans' trespass to try title action. Finally, to the extent that the Jordans contend Bustamante disclaimed his interest in the 155 acres, such disclaimer was withdrawn with the trial court's permission.

*Validity of Tax Judgment and Sale*

█ The Jordans assert the tax sale is void because when the taxing unit, Cypress–Fairbanks, initiated its suit for delinquent taxes, it prosecuted the suit to full judgment without ever joining the State or the IRS, both of which had tax liens against the property. In support of this contention, the Jordans rely on *Norris v. Harry Hott & Assocs., Inc.*, 612 S.W.2d 630 (Tex.Civ.App.-Dallas 1981, no writ). Our review of *Norris* reflects that it does not support the Jordans' position.

In *Norris*, when the State filed its tax foreclosure suit, two parties—Hott and Runnymead—each had a deed in their favor to the land in question on file in the deed records of Dallas County. *Id.* at 631. While Runnymead was made a party in the State's tax suit, Hott was not. *Id.* at 632. Observing that a tax foreclosure suit must include the record owner and all parties owning or claiming any interest in the property, the Dallas Court of Appeals held that the State's foreclosure judgment remained valid as to Runnymead (the party named in the tax suit), but did not bind Hott (the party not named in the tax suit). *Id.* at 632.

Here, the judgment in the first tax suit is not wholly void, but is valid as to the Jordans, who were part of that suit. *See, e.g., Loper v. Meshaw Lumber Co.*, 104 S.W.2d 597, 599–600 (Tex.Civ.App.-East-

---

5. Emphasis added.

land 1937, writ dism'd) (stating judgment in tax suit is not void because all parties owning interest are not made parties; instead, judgment foreclosing tax lien is good as against parties joined in suit, but parties not joined are not bound by judgment); *Adams v. West Lumber Co.*, 162 S.W. 974, 976 (Tex.Civ.App.-Texarkana 1913, writ ref'd) (explaining that parties to proceedings are bound by judgment while those who were not parties to proceedings are not bound by judgment). Because the State and the IRS were not joined in the first tax suit, their lien interests were not disposed of and Bustamante took the 155 acres subject to those liens. *See First State Bank–Keene v. Metroplex Petroleum Inc.*, 155 F.3d 732, 737 (5th Cir.1998) (explaining that tax suit was not wholly void, but because FDIC was not party to tax suit, its lien interest was not disposed of and appellants took property subject to its lien).

However, the Jordans do not have standing to complain of any alleged injury to the State or the IRS due to Cypress–Fairbanks' failure to join them as parties in the first tax suit. *See Sweed v. City of El Paso*, No. 08–00–00195, 2001 WL 1469071, at *2 (Tex.App.-El Paso Nov. 20, 2001, pet. denied) (not designated for publication) (holding failure to join all interested parties in delinquent tax suit did not deprive trial court of power to render valid judgment against those actually named, and appellant had no standing to assert any rights on behalf of third party). A party may not complain of errors that do not injuriously affect it or that merely affect the rights of others. *In re P.R.*, 994 S.W.2d 411, 416 (Tex.App.-Fort Worth 1999, pet. dism'd w.o.j.), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex.2002); *see also McDaniel v. Texas Natural Res. Conservation Comm'n*, 982 S.W.2d 650, 654 (Tex.App.-

Austin 1998, pet. denied) (landowner did not have standing to assert interest of adjacent landowners who did not receive notice from Commission of applicant's affiliation with another party); *Copher v. First State Bank*, 852 S.W.2d 738, 740 (Tex. App.-Fort Worth 1993, no writ) (judgment debtor had no standing to assert interest of party who allegedly was never given notice of hearing); *American Operating Co. v. Railroad Comm'n of Tex.*, 744 S.W.2d 149, 155 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (holding unit owner had no standing to challenge lack of notice to royalty interest lessor); *Murmur Corp. v. Board of Adjustment*, 718 S.W.2d 790, 793 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (holding subsequent purchaser of property had no standing to complain of lack of notice to former owner).

*Statute of Limitations*

The Jordans are further precluded under Section 33.54 of the Texas Property Tax Code from challenging Bustamante's title to the 155 acres purchased from Cypress–Fairbanks. *See* Tex. Tax Code Ann. § 33.54 (Vernon 2001). An action for title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced "before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record." *Id.* at § 33.54(a)(1). A person may not "commence" an action against the purchaser of the property unless he deposits into the registry of the court an amount equal to that of the delinquent taxes, penalties, and interest specified in the foreclosure judgment, plus all costs of the tax sale. Tex. Tax Code Ann. § 34.08(a)(1) (Vernon 2001). Moreover, a person may not commence an action challenging the validity of the tax sale after the time set forth in § 33.54(a)(1). *Id.* at § 34.08(b).

Cypress–Fairbanks purchased the 155 acres in the constable's sale on April 4, 1995. The constable's deed to Cypress–Fairbanks was recorded in the Harris County real property records on May 9, 1995. Bustamante filed suit on the 29 acres on April 13, 1999. On June 16, 1999, the Jordans filed a counterclaim against Bustamante on both the 29 and 155 acres. Therefore, the Jordans failed to commence their action on the 155 acres by the one-year anniversary of the recording of the constable's deed to Cypress–Fairbanks, i.e., May 9, 1996, instead, waiting more than three years after the date on which the constable's deed to Cypress–Fairbanks was filed.[6] Therefore, such action is barred under § 33.54 and the purchaser at the tax sale (Cypress–Fairbanks) or the purchaser's successor in interest (Bustamante) has full title to the 155 acres precluding all other claims. *See* Tex. Tax Code Ann. § 33.54(c) ("When actions are barred by this section, the purchaser at the tax sale or the purchaser's successor in interest has full title to the property, precluding all other claims."); *see also* Tex. Tax Code Ann. § 34.08(b) ("The purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale, . . .").

The Jordans contend § 33.54 is not operative outside the confines of the trespass to try title statute. Therefore, according to the Jordans, Bustamante's limitations defense under § 33.54 "died" when his trespass to try title action was extinguished by abandonment. As previously addressed, the trial court granted Bustamante's motion for new trial, putting the case back in the same position as if no trial

had occurred. Thereafter, the Jordans asserted a trespass to try title action against both the 29 and 155 acres in their third amended counterclaim. Bustamane filed an answer to the Jordans' third amended counterclaim, asserting a general denial, a plea of "not guilty," and several affirmative defenses, including § 33.54 limitations, and nonsuited his affirmative claims against the Jordans, leaving the Jordans as the plaintiffs and Bustamante as the defendant in this trespass to try title action. By asserting a general denial and pleading "not guilty," Bustamante claimed better title to the property. *Bellaire Kirkpatrick Joint Venture*, 826 S.W.2d at 209. Thus, Bustamante asserted § 33.54 limitations as an affirmative defense to the Jordans' trespass to try title action.

■■■ The Jordans further claim that a party attempting to establish title by asserting § 33.54 limitations must introduce, in addition to the tax deed, the same documentation that proves a valid tax deed, including the tax judgment and order of sale. *See Volunteer Council of Denton State Sch., Inc. v. Berry*, 795 S.W.2d 230, 238 (Tex.App.-Dallas 1990, no writ). The Jordans' reliance on the *Berry* case is misplaced. The court in *Berry* based its decision on a reading of a previous version of § 33.54 which provided:

> No cause of action or defense may be asserted or maintained on a claim respecting any land sold for delinquent taxes at a tax sale *pursuant to a judicial foreclosure of a tax lien*, unless the cause of action or defense is asserted in an action commenced within three years after the filing of rec-

---

**6.** We also note that the Jordans did not deposit funds into the registry of the court equal to the amount of the delinquent taxes, penalties, and interest specified in the judgment of fore-

closure, plus costs of the sale as required to even "commence" an action challenging the validity of the tax sale. Tex. Tax Code Ann. § 34.08(a)(1).

ord of the deed executed to the purchaser at the tax sale.

*Id.* at 238 (quoting Tex.Rev.Civ. Stat. Ann. art. 7345(b)–3(a)) (emphasis in original).[7] The *Berry* court explained that the italicized language of former § 33.54 required a tax deed proponent to show the sheriff's authority to sell before proving a valid deed. *Id.* at 240. The *Berry* court recognized the italicized language was dropped when the legislature recodified article 7345b–3(a) in § 33.54 of the Tax Code, but, nonetheless, held that in order to invoke the protections of § 33.54, a party must introduce the same documentation that proves a valid tax deed. *Id.*

The San Antonio Court of Appeals disagreed and rejected that same argument. *See Cedillo v. Gaitan,* 981 S.W.2d 388 (Tex.App.-San Antonio 1998, no writ). After reviewing the language and history of § 33.54, the *Cedillo* court found "no reason to interpret section 33.54 other than as it was written and enacted by the Texas Legislature." *Id.* at 393. The San Antonio Court of Appeals, therefore, held the plaintiffs' suit in that case was barred because it was not filed within three years after the date the tax deed was recorded. *Id.*[8]

In light of the plain language of § 33.54 and the San Antonio Court of Appeals' decision in *Cedillo,* we reject the Jordans' contention that Bustamante was required to introduce the tax judgment and order of sale in order to rely on § 33.54 limitations. The trial court did not abuse its discretion in awarding Bustamante the 155 acres in its final judgment.

## BUSTAMANTE'S CROSS-APPEAL

Bustamante appeals the granting of summary judgment in favor of the Jordans awarding them the 29 acres. The Jordans moved for summary judgment on the following grounds: (1) they could prove their title back to the sovereign, (2) Bustamante had abandoned his trespass to try title action, (3) the tax sales were void because the State and the IRS were not joined in the tax suit even though they were lienholders, (4) the tax sale was void because the assignment of the tax judgment to Bustamante's wife was not signed by the president of the board of trustees of the school district; (5) they have standing to challenge the failure to join the lienholders in the tax suit; and (6) their claim is not subject to the statute of limitations.

In response to the Jordans' motion for summary judgment, Bustamante argued (1) the Jordans' action was barred by res judicata, (2) the Jordans lacked standing to complain about the failure to join the State and the IRS, (3) the Jordans could not collaterally attack an agreed judgment from a forcible entry and detainer action giving Bustamante possession to the entire 184 acres, (4) the Jordans' action was barred by § 33.54 limitations, (5) the Jordans' action was barred by § 34.08 for failing to deposit an amount equal to the tax judgment and costs into the registry of

---

7. Act of June 15, 1977, 65th Leg., R.S., ch. 663, § 1, 1977 Tex. Gen. Laws 1680, *amended by* Act of June 13, 1979, 66th R.S., ch. 841, 1979 Tex. Gen. Laws 2296.

8. The former version of § 33.54 provided that a cause of action relating to the title of property could not be maintained against the purchaser of the property at a tax sale unless the action was commenced within *three years* after the deed executed to the purchaser was filed of record. Act of June 13, 1979, 66th R.S., ch. 841, 1979 Tex. Gen. Laws 2296, (amended 1997) (current version at Tex. Tax. Code Ann. § 33.54). The current version of § 33.54 provides the action must be commenced prior to the one-year anniversary that the deed executed to the purchaser at the tax sale is filed of record. Tex. Tax.Code Ann. § 33.54.

the court, (6) the Jordans ratified the constable's sale by seeking the excess proceeds, and (7) the Jordans failed to tender the debt for all taxes paid by Bustamante. The trial court granted the Jordans' motion for summary judgment on the 29 acres and ordered the tax foreclosure sale set aside, and any lien in existence at the time of the foreclosure sale remain a burden on the property to extent such lien had not been satisfied.

### Abandonment of Cause of Action for Trespass to Try Title

The Jordans assert Bustamante's abandonment of his trespass to try title claim is dispositive of his appeal of the judgment awarding the 29 acres to them. As addressed above, we conclude Bustamante still claimed title when he pleaded "not guilty." In their second amended counterclaim, which was the Jordans' live pleading during the first trial, the Jordans asserted title to the 29 acres. In his response to their claim to the 29 acres, Bustamante asserted a general denial, a plea of "not guilty," and affirmative defenses. Therefore, Bustamante asserted possession and better title to the 29 acres, forcing the Jordans to prove their title was superior. We conclude Bustamante did not abandon his claim to the 29 acres.

### Validity of Tax Judgment and Sale

The Jordans contend again that the tax sale is void because the IRS and the State as lienholders were not joined in the tax suit. The State issued a partial release of its $600,000 lien on the 29 acres after having been awarded the excess proceeds. The IRS also filed a "Disclaimer of Inter-

est" in the 29 acres. In any event, as noted above, the tax judgment was not void as to the Jordans who were parties to the suit[9] and the Jordans do not have standing to complain about any failure to join the State and the IRS in the tax suit.[10]

■ The Jordans further argue the tax sale was void because the president of the school district's board of trustees did not execute the "quitclaim deed" to Bustamante's wife, Elaine Paleologo. *See* TEX. EDUC.CODE ANN. § 11.154(b) (Vernon 1996) ("The president of the board of trustees shall execute a deed to the purchaser of the property reciting the resolution of the board of trustees authorizing the sale."). Cypress–Fairbanks assigned the judgment to Bustamante's wife, it did not convey the property by means of a quitclaim deed. Section 11.154 specifically refers to a "deed" executed by the president of the board of trustees, not an assignment of a judgment. In any event, we find no authority that any failure of the president of the board to sign the assignment of judgment voids the subsequent tax sale. *Cf. R.B. Spencer & Co. v. Brown,* 198 S.W. 1179, 1181 (Tex.Civ.App.-El Paso 1917, writ ref'd) (holding it was not intention that failure to recite board resolution authorizing sale should nullify deed).

### Statute of Limitations

■ As with the 155 acres, Bustamante asserts the Jordans' action to set aside the constable's deed to the 29 acres is barred by § 33.54 limitations. As discussed above, § 33.54(a)(1) provides "an action relating to the title to property may not be maintained against the purchaser of the

---

**9.** *See First State Bank–Keene,* 155 F.3d at 737; *Loper,* 104 S.W.2d at 599–600; *Adams,* 162 S.W. at 976.

**10.** *See Sweed,* 2001 WL 1469071, at \*2; *see also In re P.R.,* 994 S.W.2d at 416; *McDaniel,* 982 S.W.2d at 654; *Copher,* 852 S.W.2d at 740; *American Operating Co.,* 744 S.W.2d at 155; *Murmur Corp.,* 718 S.W.2d at 793.

property at a tax sale unless the action is *commenced:* (1) before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record; ..." TEX. TAX CODE ANN. § 33.54 (emphasis added).

The constable's deed to Bustamante on the 29 acres was recorded in the Harris County real property records on January 14, 1999. The Jordans, therefore, would have to commence their action on the 29 acres by January 13, 2000. The Jordans filed their action to set aside the tax sale on June 16, 1999.

However, "[a] person may not *commence* an action that challenges the validity of a tax sale under this chapter unless the person: (1) deposits into the registry of the court an amount equal to the amount of the delinquent taxes, penalties, and interest specified in the judgment of foreclosure obtained against the property plus all costs of the tax sale." TEX. TAX CODE ANN. § 34.08(a)(1). The Jordans did not deposit any funds into the registry of the court as required by section 34.08(a)(1) of the Texas Property Tax Code until April 26, 2000. Having failed to make the required deposit until after January 13, 2000, the Jordans "may not commence an action challenging the validity of the tax sale after the time set forth in Section 33.54(a)(1) ... against a subsequent purchaser for value who acquired the property in reliance on the tax sale." *Id.* at § 34.08(a). Therefore, Bustamante "may conclusively presume that the tax sale was

valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale, subject ... to applicable rights of redemption." *Id.* The Jordans have not shown that they attempted to redeem the property.

■■■■■ The Jordans argue that by abandoning his trespass to try title action, Bustamante abandoned his claim to title based on § 33.54 and § 34.08 limitations.[11] As already discussed, Bustamante asserted his § 33.54 limitations defense in response to the Jordans' trespass to try title action. We hold the Jordans were barred by § 33.54 from challenging the validity of the tax sale to Bustamante.

However, while Bustamante raised the statute of limitations in response to the Jordans' motion for summary judgment, he did not move for summary judgment on this affirmative defense. Therefore, we cannot render judgment, but must remand this portion of the case to the trial court.

### Award of Costs

Finally, Bustamante contends the trial court erred in ordering that each party pay their own costs. Rule 131 of the Texas Rules of Civil Procedure provides "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. In view of our ruling on Bustamante's cross-appeal, we reverse

---

**11.** The Jordans also argue that the statute of limitations provision set forth in § 33.54, which is, and was asserted as, an affirmative defense, is one of the four methods by which to affirmatively prove a trespass to try title action. To prevail in a trespass to try title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove *title by limitations,* or (4) prove title by prior possession coupled

with proof that possession was not abandoned. *Martin v. Amerman,* 133 S.W.3d 262, 265 (Tex.2004). However, "proving title by limitations" means to. proving title by *adverse possession. Diversified, Inc. v. Hall,* 23 S.W.3d 403, 406 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *Bellaire Kirkpatrick Joint Venture,* 826 S.W.2d. at 209; *Wells v. Kansas Univ. Endowment Ass'n,* 825 S.W.2d 483, 486 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

to that portion of the trial court's judgment ordering the parties to pay their own costs and remand to the trial court.

CONCLUSION

We affirm that portion of the trial court's judgment awarding Bustamante the 155 acres. We reverse that portion of the judgment awarding the Jordans the 29 acres and remand to the trial court. We further reverse that portion of the judgment ordering the parties to pay their own costs. Accordingly, the judgment of the trial court is affirmed, in part, and reversed and remanded, in part.