**Affirmed in Part, Reversed and Rendered in Part, and Reversed and Remanded in Part, and Opinion filed November 23, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00125-CV

---

### TARGET CORPORATION, Appellant

### V.

### D&H PROPERTIES, LLC, Appellee

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-02168**

---

## O P I N I O N

Target Corporation appeals a take nothing judgment declaring an easement and an option relating to a parcel of land void and denying Target's request for a permanent injunction to enforce the easement.

The land in question is currently the location of a Target store. A prior owner sold the majority of the land for commercial development, but due to environmental contamination and ongoing remediation requirements concerning a small section of

the property, the grantor severed the contaminated section into a separate parcel, excepted it from the transfer, and burdened it with a purchase option and easement rights in favor of the surrounding land. The current owner of the contaminated parcel, appellee D&H Properties, LLC, obtained the parcel through a conveyance following a tax foreclosure sale and sought to avoid the effect of the easement. Target sued D&H for violating the easement, for declaratory and injunctive relief, and for refusing to sell the parcel pursuant to the purchase option. After a bench trial, the trial court denied Target's request for injunctive relief and signed a judgment declaring the easement void and the option extinguished.

For the reasons explained below, we conclude that the trial court erred in declaring the easement void. We render judgment in Target's favor on its breach-of-contract claim and its request for declaratory relief related to the easement. Regarding Target's challenge to the portion of the judgment denying its request for specific performance of the purchase option, however, Target has not established that the trial court erred in declaring the option extinguished by the tax foreclosure sale. Therefore, we overrule Target's issue and affirm the portion of the judgment declaring the option extinguished. We remand this case for entry of permanent injunctive relief and for consideration of attorney's fees under the Declaratory Judgment Act in light of our disposition.

## Background

The easement and option at issue relate to real property once owned by National Oilwell Varco ("NOV"). In 2002, NOV sold the property to a real estate development company, Woodland Heights Development, L.P. We refer to this real property as the "Dominant Tract." When NOV transferred the Dominant Tract, it excepted from the transfer and retained ownership of a 0.8944-acre parcel within the Dominant Tract that was environmentally contaminated and subject to government-

2

mandated remediation. We refer to the 0.8944-acre contaminated parcel as the "Environmental Parcel."

When NOV transferred the Dominant Tract, it executed a Non-Exclusive Easement Agreement (the "Original Easement Agreement") in favor of Woodland Heights. The Original Easement Agreement granted Woodland Heights a perpetual non-exclusive easement over the surface of the Environmental Parcel for ingress and egress, parking, landscaping, recreational purposes, and signage uses (the "Use Easement"). NOV, on the other hand, retained the obligation to maintain the Environmental Parcel, including the duty to comply with all continuing environmental remediation activities. To assist NOV in satisfying this obligation, the Original Easement Agreement granted NOV ingress and egress rights across the Dominant Tract "for the purpose of permitting [NOV] to inspect and repair [the Environmental Parcel], with reasonable prior notice to [Woodland Heights]" (the "Access Easement"). NOV, however, could not exercise its access rights or use the Environmental Parcel in a manner that interfered with Woodland Heights' operations on or use of the Dominant Tract and the Use Easement. Also, the rights and duties in the easement ran with the land. Specifically, the Original Easement Agreement provided that all "rights granted and obligations imposed hereby shall run with the land and shall be binding upon and inure to the benefit or burden, as the case may be, of Grantor [NOV] and Grantee [Woodland Heights] and their legal representatives, successors, and assigns as owners of Grantor's Property and Grantee's Property, respectively."

With the Original Easement Agreement, NOV and Woodland Heights signed an option agreement, which provided Woodland Heights the option to purchase the Environmental Parcel for a specified price depending on whether NOV completed the environmental remediation.

3

The deed, the Original Easement Agreement, and a Memorandum of Option were recorded in the Harris County real property records in September 2002.

About two years later, the following relevant series of conveyances and transactions occurred. Woodland Heights executed a Special Warranty Deed conveying the Dominant Tract, together with additional land, to Sawyer Heights Village, Ltd. (the "Sawyer Heights Deed"). The Sawyer Heights Deed referenced the Original Easement Agreement and the option. Contemporaneously, Woodland Heights and NOV amended the option[1] to declare that: (1) the option period extends until November 1, 2054; (2) the option runs with the land; and (3) the option inures to the benefit of any subsequent owner of the Dominant Tract upon conveyance. Hereafter, we refer to the option, as amended, as the "Option." Woodland Heights assigned the Option to Sawyer Heights when it conveyed the Dominant Tract.

After the conveyance of the Dominant Tract to Sawyer Heights, NOV, Sawyer Heights, and another company, TPO-GP, Inc. ("TPO"),[2] amended the Original Easement Agreement to expand the Use Easement in the Dominant Tract's favor to expressly include the right to pave the Environmental Parcel (the "Amended Easement Agreement"). As part of the Amended Easement Agreement, the parties agreed that NOV could use the Environmental Parcel "for any uses which do not interfere with (i) the use of [the Use Easement] or (ii) [Sawyer Heights'] operations on, or use of, [Sawyer Heights'] property or the use or operations of any other party having rights to occupy or use [the Dominant Tract]." The Amended Easement Agreement stated, "[e]xcept as specifically modified hereby, the Original Easement [Agreement] shall remain in full force and effect."

---

[1] As drafted, the option expired when Woodland Heights no longer owned the Dominant Tract.

[2] TPO owned an adjacent tract.

4

Sawyer Heights then conveyed by special warranty deed most of the Dominant Tract to Target (the "Target Deed"). Sawyer Heights also assigned the Option to Target. Target, Sawyer Heights, and TPO entered into an "Operations and Easement Agreement," which governed operations on the Dominant Tract. NOV retained ownership of the Environmental Parcel and was not a party to the Operations and Easement Agreement.

These transactions occurred in October 2004. The parties promptly recorded the deeds, a Memorandum of the Amended Option, the assignments of the Option, the Operations and Easement Agreement, and the Amended Easement Agreement in the Harris County property records.

Target built a retail store and parking lot on the property, which included the Dominant Tract; and Target paved over the Environmental Parcel as part of the parking lot. The store opened in July 2006. Below is an aerial map of the property provided by Target in its briefing. The Environmental Parcel is labeled "Contaminated Parcel" in this depiction.



Years later, in 2014, NOV sold the Environmental Parcel to Biloxi Bacon Enterprise Corporation. The deed referenced and attached the Original Easement

Agreement. Biloxi Bacon failed to pay 2014 ad valorem taxes on the property, and Harris County filed a tax foreclosure suit. Biloxi Bacon answered the suit but did not appear for trial, resulting in a default tax foreclosure judgment. Target did not become aware of the tax foreclosure suit or judgment until after the judgment.

As the tax foreclosure proceedings were ongoing, Biloxi Bacon obtained in 2017 a default judgment against Woodland Heights purporting to void the Original Easement Agreement. At that time, however, Woodland Heights no longer owned the Dominant Tract and, in fact, was no longer in existence, having dissolved in 2006.

Pursuant to the tax foreclosure judgment, the taxing authority sold the Environmental Parcel in 2018 to MRH Properties, LLC, an entity owned by Mahmoud Harmouche, for $345,000. Through a series of deeds, the Environmental Parcel is now owned by appellee D&H Properties, LLC, which is owned by Harmouche and Ankur Desai, who are both experienced real estate developers. D&H's deed is expressly "subject to any and all restrictions, covenants, easements, encroachments, and other matters of record to the extent the same are validly existing and applicable to the Property."

Desai testified that, before he and Harmouche purchased the Environmental Parcel, they searched the Harris County real property records, but he could not recall if they found the easement agreements or the Option. Neither Desai nor Harmouche conducted a title search on the Environmental Parcel until after they purchased it. According to Desai, he and Harmouche discovered the easement agreements and the Option while obtaining title insurance.

As matters now stand, Target owns the Dominant Tract, and D&H owns the Environmental Parcel. Since Target acquired the Dominant Tract, it has exercised its right to use the Use Easement continuously. Target paved the Environmental

Parcel and used it for guest and employee parking and for truck access to its loading dock.

But in January 2019, D&H installed a chain-link fence on the parking lot around the Environmental Parcel's boundary, which prevented Target from exercising some of its rights under the Use Easement. The following is an aerial photograph provided by Target, showing the general location of the chain link fence and the Environmental Parcel (labeled on this photograph as the "Servient Parcel"):



Target's preferred truck access route to its loading dock is shown in green in the above photograph.

Target sued D&H on January 10, 2019, seeking injunctive relief and damages for breach of the Use Easement. The trial court issued a temporary restraining order, pursuant to which Target removed the fence. The trial court then issued a temporary injunction, prohibiting D&H from obstructing, interfering with, or encroaching on Target's use and enjoyment of the Use Easement. In August 2019, the trial court modified the temporary injunction to allow D&H to lease the Environmental Parcel

to a third party for parking. The next month, Target attempted to exercise the Option to purchase the Environmental Parcel, but D&H refused to close the sale.

The suit proceeded to a bench trial. In its live pleadings, Target sought the above-described relief, as well as damages for tortious interference with property rights, breach of the Option agreement, and declaratory relief. Regarding the Use Easement, D&H pleaded that, as relevant: (1) it is void under the statute of frauds; (2) it was not conveyed to Sawyer Heights and thus could not have been conveyed to Target; and (3) it is void because it prohibits D&H's use of the Environmental Parcel. Regarding the Option, D&H contended that it was extinguished by the tax foreclosure sale.

The trial court issued a final judgment in D&H's favor, declaring the Use Easement void and the Option extinguished and ruling that Target take nothing on its other claims against D&H. The trial court signed the following findings of fact and conclusions of law that same date:

> **Findings of Fact:**
> 1. The easement (the "Easement") that is the subject of this case provides no point of ingress or egress or any precise location for its use and Target has provided no contemporaneous evidence of any understanding as to location or point of ingress or egress between the parties to the Easement.
> 2. Target objects to D&H's use of its property for any commercial purpose and cannot articulate any commercial purpose to which it would not object.
> 3. Target had notice of the tax foreclosure sale.
>
> **Conclusions of Law:**
> 1. Easements are interests in land and are subject to the statute of frauds. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983).
> 2. An easement is void and violates the statute of frauds if it does not sufficiently describe the interest conveyed. For an easement to be

8

enforceable a surveyor must be able to go onto the property and be able to specifically locate the easement area. *Vrabel v. Donahoe Creek Watershed Authority*, 545 S.W.2d 53 (Tex. App.—Austin 1976, no writ).

3. The Easement is void and unenforceable. The Easement does not sufficiently describe the interest conveyed because it has no means to describe its location or any point of ingress or egress or areas where parking is permitted. The Easement thus violates the statute of frauds.

4. The Easement is void and unenforceable because as interpreted by Target it prohibits use by D&H, as the owner. *Baker v. Henderson*, 153 S.W.2d 465, 471 (Tex. 1941).

5. D&H's immediate predecessor in title acquired the property described in the Easement at a tax foreclosure sale. Thus, D&H has good and perfect title subject only to the exceptions described in Section 34.01(n) of the Texas Tax Code.

6. Texas law provides that a mortgagee must be a party to a tax lawsuit but that no other holder of a property interest is entitled to notice nor required to be a party. *Sec. State Bank & Trust v. Bexar Cty.*, 397 S.W.3d 715 (Tex. App.—San Antonio 2012, pet. denied).

7. The rights of a holder of an option to purchase property are inferior to a tax lien. *See* § 32.05 Texas Tax Code.

8. The option to purchase was extinguished by the tax sale.

9. Section 33.54 of the Texas Tax Code provides a remedy to parties to challenge a tax sale. *Jordan v. Bustamante*, 158 S.W.3d 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Target objected to the judgment and findings and conclusions, and it requested additional or amended findings and conclusions. D&H also requested additional findings and conclusions. The trial court issued the following additional findings and conclusions:

**Additional Findings of Fact:**

1. Target Corporation ("Target") has 18-wheeler vehicular access to its loading dock without traversing D&H Properties LLC's ("D&H") property. The access using D&H's property is more convenient.

9

2. Target's customers use D&H's property only for overflow parking.

3. Ankur Desai is an experienced real estate investor and broker and is qualified to provide expert opinion testimony about the values of commercial property.

4. Target's interpretation of the Easement excluding D&H from using its own property means D&H's property is worthless and has no value.

5. Target has never paid any real property taxes on D&H's property.

6. Target was aware of D&H's intent to construct a fence for many weeks in advance.

7. Ankur Desai visited with Target's assistant manager, Erika Baker, the day the fence was constructed and she expressed no concerns to Mr. Desai.

8. Mr. Desai told Ms. Baker to call him if Target needed access through the fence and gave her his cellphone number.

9. There is normally one general merchandise 18-wheeler that arrives at night to use Target's loading dock. The driver uncouples the container for later unloading, attaches an empty trailer, and leaves. There is generally one 18-wheeler that delivers food per day. Vendor trucks unload at places other than the loading dock.

10. No vehicles owned by Target park on D&H's property.

**Additional Conclusions of Law:**

1. An exception in a deed that lists an easement means the property conveyed is burdened by the easement. *Magee v. Hambleton*, 2009 WL: 2619425 (Tex. App.—Fort Worth 2009, pet. denied).

2. The exception of the Easement in the deed from Woodland Heights Development, L.P. ("Woodland Heights") to Sawyer Heights, Ltd. ("Sawyer Heights") provided notice that National Oilwell, L.P. ("NOV") had access for the limited purpose of its remediation obligations.

3. An express exception in a deed of an easement controls over an implied transfer or assignment of an easement. *Mehan v. Babbel*, 2018 WL 1751155 (Tex. App.—Amarillo 2018, pet. denied).

4. D&H did not breach a contract with Target.

5. While courts have jurisdiction to declare a judgment of another court void, the parties to both suits must be the same. The parties to the underlying tax suit are not the same parties as in this case, therefore the underlying judgment cannot be declared void. *Armentor v. Kern*, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Target timely appealed.

## Issues Presented

Target presents a single overarching issue: whether the trial court erred by rendering judgment in D&H's favor. Target includes three sub-issues: (1) is the Use Easement enforceable by Target; (2) did the Option survive the tax foreclosure sale; and (3) is Target entitled to judgment on its claims?

## Standard of Review

The trial court held that the Use Easement is void and that the Option "has been extinguished." We review a trial court's conclusions of law de novo to determine whether they are correct. *See Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Whether an unambiguous agreement, including an easement, is valid and enforceable is a legal question, which we likewise review de novo. *Kennebrew v. Harris*, 425 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see Texan Land & Cattle II, Ltd. v. ExxonMobil Pipeline Co.*, 579 S.W.3d 540, 543 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.) ("We review the trial court's interpretation of restrictive covenants and easements de novo.").

11

**Analysis**

**A.   Is the Use Easement enforceable by Target?**

We begin with Target's first issue:  the Use Easement's enforceability.

1.   *Law governing easement interpretation*

A property owner's right to exclude others from its property is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). But a landowner may relinquish the right to exclude others by granting an easement. *See id.*  An easement is a nonpossessory property interest authorizing its holder to use another's property for particular purposes. *Lance v. Richardson*, 543 S.W.3d 723, 736 (Tex. 2018); *Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) (op. on reh'g).

The servient estate holder, that is, the owner of the underlying fee, cannot interfere with the dominant estate holder's use of an easement for the easement's purposes. *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 443 (Tex. App.—Fort Worth 2020, no pet.).  Thus, any use by the servient estate holder that interferes with the exercise of the dominant estate holder's rights "must yield."  *Id.*; *see also Severance*, 370 S.W.3d at 721 ("Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement.").

Nothing passes by implication through an easement "except what is reasonably necessary" to fairly enjoy the rights expressly granted. *Marcus Cable*, 90 S.W.3d at 701.  If a particular purpose is not provided for in the grant, the holder of the easement may not use the property for that purpose. *See id.*  The emphasis

that Texas law places upon an easement's express terms serves important public policies by promoting certainty in land transactions. *Id.* at 702. A potential purchaser of an easement must be able to safely rely upon granting language. *Id.* And those who grant easements should be assured that their conveyances will not be construed to undermine private property rights beyond what was intended in the grant. *Id.* If a use does not serve the easement's purpose, it becomes an "unauthorized presence on the land." *Id.* at 703. Additionally, a non-exclusive easement, such as is present here, generally permits the servient estate holder to share in the benefit of the easement. *See First Colony Cmty. Servs. Assoc., Inc. v. Valentz*, No. 01-16-00060-CV, 2017 WL 711740, at *4 (Tex. App.—Houston [1st Dist.] Feb. 23, 2017, no pet.) (mem. op.).

As easement agreements are contracts, we view them with an eye toward Texas's public policy that "strongly favors freedom of contract"—a liberty with which courts are not to "lightly interfere." *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017). Parties have the right to contract as they see fit, so long as their agreement does not violate the law or public policy. *Id.* Absent compelling reasons, we must respect and enforce the terms of a contract that the parties have freely and voluntarily entered. *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016).

When construing an easement, "courts deploy the rules of contract interpretation and look to the easement's express terms to determine its scope." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020) (citing *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)). As in other contract interpretation cases, courts look to the entirety of the easement and "harmonize its terms to give effect to all the provisions." *Id.* If the easement's terms can be given a definite or certain meaning, "then the language is not ambiguous, and the court is

13

obligated to interpret the contract as a matter of law." *DeWitt Cty. Elec. Coop., Inc.*, 1 S.W.3d at 100.

With these principles in mind, we turn to Target's arguments concerning the Use Easement in today's appeal.

2.  *D&H did not establish that the Use Easement is void.*

The trial court declared the Use Easement void and unenforceable under various legal theories asserted by D&H. We address each theory in turn.

a.  The Original Easement Agreement satisfies the statute of frauds.

Because easements are real property interests, easement agreements are subject to the statute of frauds. *See Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *see also* Tex. Bus. & Com. Code § 26.01 (requiring that certain agreements must be in writing). To satisfy the statute of frauds, an easement agreement must furnish within itself or by reference to other identified writings then in existence means or data by which the servient estate may be identified with certainty. *See Pick*, 659 S.W.2d at 637; *see also BSG-Spencer Highway Joint Venture, G.P. v. Muniba Enters., Inc.*, No. 01-15-01109-CV, 2017 WL 3261365, at * 5-7 (Tex. App.— Houston [1st Dist.] Aug. 1, 2017, pet. denied) (mem. op.); *Double Diamond, Inc. v. Barber*, No. 11-02-00277-CV, 2003 WL 21804872, at *2-3 (Tex. App.—Tyler Aug. 7, 2003, no pet.) (mem. op.) ("The easement must provide enough information from which the court can determine the intent of the parties, as well as the essential terms of the easement, and must also provide an adequate description of the location of the easement without resort to extrinsic evidence.").

The trial court held that the Use Easement violates the statute of frauds because it "does not sufficiently describe the interest conveyed because it has no means to describe its location or any point of ingress or egress or areas where parking

is permitted." The court cited *Vrabel v. Donahoe Creek Watershed Authority*, 545 S.W.2d 53 (Tex. App.—Austin 1976, no writ). In *Vrabel*, the purported easement was described as:

> BEING 111.0 acres, more or less, out of a 250.5 acre tract of land in the Basil Durbin Survey, as more fully described in a Warranty Deed dated January 1, 1953, from Erwin Mankins and wife, Mayna Allene Mankins, to Leslie E. Moore and wife, Lela Mae Moore as recorded in Volume 385, Page 599, of the Deed Records of Williamson County, Texas, to which reference is made for all purposes.

*Id.* at 54. The Austin Court of Appeals declared this easement void: "Inasmuch as the easement before us does not furnish within itself a description to its location, nor is there any reference to outside aids to help in determining its location, the easement must fail for lack of an adequate description." *Id.*

The Original Easement Agreement's relevant language, however, differs materially from that at issue in *Vrabel*. The agreement provides in pertinent part:

> WHEREAS, *Grantee [Woodland Heights] is the owner in fee simple of that certain real property situated in Harris County, Texas, as more particularly described on Exhibit A attached hereto and made a part hereof for all purposes ("Grantee's Property")*;
>
> WHEREAS, *Grantor [NOV] is the owner in fee simple of (i) that certain real property situated in Harris County, Texas, as more particularly described on Exhibit B attached hereto and made a part hereof for all purposes ("Tract One"), and (ii) that certain real property situated in Harris County, Texas, as more particularly described on Exhibit C attached hereto and made a part hereof for all purposes ("Tract Two") (Tract One and Tract Two are collectively referred to herein as "Grantor's Property")*;
>
> WHEREAS, Grantee desires, and Grantor is willing to grant, a perpetual, non-exclusive easement over the surface only of Grantor's Property, for the Limited Purposes (hereinafter defined);

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Grant. Grantor does hereby grant, sell and convey unto Grantee, its successors and assigns, *a perpetual, non-exclusive easement over the surface only of Grantor's Property (the "Easement" for the Limited Purposes.*

2. Limited Purposes. *The Limited Purposes (herein so called) for which the Easement may be used are ingress and egress, parking, landscaping, recreational purposes and signage uses*; however, no such activities shall be conducted in a manner which violates the Certification of Completion (collectively, the "Completion Certificates") issued by the Texas National Resources Conservation Commission (now called Texas Commission on Environmental Quality and hereinafter called the "TCEQ"), copies of which are attached hereto as Exhibit "D" (as to Tract One) and Exhibit "E" (as to Tract Two) and made a part hereof for all purposes hereunder.

(Italics added).

Exhibits A, B, and C, which are attached to the agreement and recorded in the property records along with it, contain metes and bounds descriptions of NOV's and Woodland Heights' respective properties. It is undisputed that Exhibit A describes the Dominant Tract and that Exhibit B describes the Environmental Parcel.[3] And as the Original Easement Agreement makes clear, NOV granted Woodland Heights an easement over the *entire* surface estate of the Environmental Parcel, for the limited purposes of "ingress and egress, parking, landscaping, recreational purposes and signage uses."

We conclude that the trial court's ruling on D&H's statute of frauds defense is not supported by *Vrabel* or like cases, in which the easement covered only some unidentified portion of the servient estate. *See Vrabel*, 545 S.W.2d at 54 (easement

---

[3] Exhibit C appears to describe additional acreage retained by NOV, ultimately conveyed to Target, and not part of this dispute.

described as "111.0 acres, more or less, out of a 250.5 acre tract of land" failed "for lack of an adequate description"); *see also Double Diamond*, 2003 WL 21804872, at *3 (holding that easement violated the statute of frauds because the language of the easement—"via an agreed, acceptable route"—did not "sufficiently describe the conveyance and [did] not sufficiently show the intention of the parties"). No such deficiencies in easement description exist here. Similar easements, often referred to as "general" or "blanket" easements, may be more commonly used in the context of utility easements;[4] but the agreement's grant of easement rights over the entire surface area of the servient estate, coupled with a sufficient description of the servient estate, does not violate the statute of frauds. *Cf., e.g., BSG-Spencer Highway*, 2017 WL 3261365, at *6-8 (citing cases and determining that easement satisfied statute of frauds because it provided a valid legal description of the servient estate and permitted ingress and egress over "those portions of [the servient estate] which are from time to time developed for ingress and egress"); *Placke v. Lee-Fayette Counties W.C.I.D. No. 1*, No. 03-04-00096-CV, 2005 WL 1034075, at *4 (Tex. App.—Austin May 5, 2005, pet. denied) (mem. op.) ("General language specifying a purpose for the easement without defining its precise parameters has been held sufficient to confer an easement.").

Simply put, the Original Easement Agreement contains the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence to show the intention of the parties. *See Pick*,

---

[4] *E.g., Sw. Elec. Power Co.*, 595 S.W.3d at 689 ("Indeed, this Court has recognized the existence of general easements that do not require a fixed width."); *Amos Energy Corp. v. Paul*, 598 S.W.3d 431, 447 (Tex. App.—Fort Worth 2020, no pet.) (explaining that a blanket easement is an easement "without a metes and bounds description of its location on the property": "It is not necessary . . . for the easement description to be a smaller area than the entire servient estate.").

659 S.W.2d at 637. Accordingly, the trial court erred in determining that the Use Easement violates the statute of frauds.

    b.  The Use Easement is not void as a prohibition of use.

The trial court also determined that "[t]he Easement is void and unenforceable because as interpreted by Target it prohibits use by D&H, as the owner." The only authority D&H offers in support of its theory is *Baker v. Henderson*, 153 S.W.2d 465, 471 (Tex. 1941), which the trial court cited. *Baker* includes statements such as, "[i]t appears well settled that restrictions which amount to a prohibition of use of the property granted are void," and "it is contrary to the well recognized business policy of the country to tie up real estate where the fee is conveyed with restrictions and prohibitions as to its use; and, hence, in the construction of deeds containing restrictions and prohibitions as to the use of the property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions." *Id.* at 470-71.

In *Baker*, a landowner sold a residential tract to purchasers who intended to build a house on it. The property was a corner lot, adjoining two streets known as Forest Trail and Bridal Path. *Id.* at 466. The deed contained a restriction prohibiting the construction of any buildings closer than 75 feet from the "property line fronting on any street adjoining said premises." *Id.* The trial court found that when the purchasers bought the lot, they did so for the purpose of erecting a residence, and that the seller waived the 75-foot set-back restriction and agreed that the purchasers could build their home at a distance of less than 75 feet from Bridal Path. *Id.* at 466-67.

After the sale, neighbors sued for an injunction restraining the purchasers from building a house without observing the deed set-back restrictions as to both

adjoining streets. The trial court ruled in the purchasers' favor, and the court of appeals affirmed. *Id.* at 467.

The supreme court also affirmed. Though it construed the deed restrictions in favor of the "free use of the land," it did so in the context of construing restrictive deed language it concluded was *ambiguous*. *Id.* at 470-71. Depending on the covenant's construction, the appellees would have been precluded from building a home on their lot, rendering their land utterly valueless. *Id.* at 471. The *Baker* court relied on the policy against the conveyance of unusable land to support a narrow reading of an ambiguous restrictive covenant; it did not apply the doctrine to hold that the covenant was void. *Id.* ("It is our duty, of course, to give effect to this restriction if we can reasonably do so and save the conveyance from being void."). It construed an ambiguous restriction to avoid "destroy[ing] the grant, so far as the purpose for which the property was acquired is concerned." *Id.* at 470 ("Being in derogation of the fee conveyed by the deed, if there be any ambiguity in the terms of the restrictions, or substantial doubt of its meaning, the ambiguity and doubt should be resolved in favor of the free use of the land.").

For several reasons, *Baker* is not applicable to the facts of today's case. First, the *Baker* court's analysis was driven by the existence of an ambiguous deed restriction. But no party has alleged or argued that the Use Easement was ambiguous nor has anyone advanced competing constructions of it. And we conclude the easement is unambiguous. *E.g.*, *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). Second, the deed restrictions in *Baker* did not benefit the neighboring landowners but were merely personal covenants, *see Baker*, 153 S.W.2d at 469-70; whereas, here, the Use Easement specifically benefits the Dominant Tract. Finally, when the purchasers in *Baker* bought the land, they did so with the understanding—based on the seller's agreement—that they could use the land acquired to build the desired

residence within 75 feet of Bridal Path. *Id.* at 466-67. The same is not true here. MRH acquired the property while on notice of the easement,[5] and D&H presented no evidence that the purchase was based on any representation or agreement that it would not have to comply with the easement. Thus, *Baker* does not support a construction of the Use Easement—or a declaration voiding it—in favor of D&H's "free use" of the Environmental Parcel.

Our holding finds strong support in a recent decision of the Supreme Court of Texas rejecting a similar argument. *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324 (Tex. 2020). There, Teal purchased real property with knowledge that a restrictive access easement burdened the property acquired. Likewise, MRH bought the Environmental Parcel at a tax foreclosure sale while on notice the parcel was burdened by the Use Easement and that the surface estate was paved and then in use as part of a Target store parking lot. Similar to D&H, Teal sought to have the easement declared void on public policy grounds because it is an "improper restraint on the use and alienation of real property." *Id.* at 329. The supreme court disagreed, finding Teal's appeal to public policy not "particularly sympathetic." *Id.* at 339. The court reiterated that "[c]ourts should refrain from nullifying a transaction because it is contrary to public policy, 'unless the transaction contravenes some positive statute or some well-established rule of law.'" *Id.* at 338. The court clarified that when the legislature has spoken on a topic, its statutory enactments are expressions of public policy. *Id.* at 339. According to the *Teal* court,

---

[5] An instrument that is properly recorded in the proper county is notice to all persons of its existence. Tex. Prop. Code § 13.002. Purchasers of real property are deemed to have constructive notice of matters reflected in real property records chain of title. *See Noble Mortg. & Inv., LLC v. D&M Vision Inv., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice."); *Jones v. Fuller*, 856 S.W.2d 597, 603 (Tex. App.—Waco 1993, writ denied).

> The legislature has spoken extensively about restrictive covenants, both upholding their enforcement and setting limits. These legislative decisions to regulate and even prohibit some restrictive covenants—but not restrictive easements like this one—militate against this Court's exercise of its common-law authority. The legislature has told us that a restrictive covenant not proscribed by statute should be "liberally construed to give effect to its purpose and intent." Tex. Prop. Code § 202.003(a).

*Id.* The court went on to explain that although covenants restricting the free use of land "are not favored," courts have enforced them for over a century. *Id.* In declining to declare a restrictive access easement void, the court concluded, "[w]e can discern no 'well-established rule of law' that compels us to put a common-law thumb on the public policy scale either way in this case." *Id.*

For these reasons, we conclude the Use Easement is neither invalid nor unenforceable on the ground that it prohibits D&H's free use of the Environmental Parcel. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 576 (Tex. App.—San Antonio 2017) ("*Teal Trading I*") (holding that where neither party alleged and court did not find easement ambiguous, easement should be construed in favor of validity), *aff'd*, Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n, 593 S.W.3d 324 (Tex. 2020) ("*Teal Trading II*"); *see also Teal Trading II*, 593 S.W.3d at 338-40 (declining to declare restrictive access easement void as against public policy); *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987) (explaining that if there is ambiguity or doubt as to intent, a restrictive covenant is to be strictly construed against the party seeking to enforce it and in favor of the free and unrestricted use of the premises). Instead, we construe the unambiguous Use Easement according to its plain terms while liberally "giv[ing] effect to its purposes and intent." Tex. Prop. Code § 202.003(a).

Moreover, even if *Baker*'s reasoning applied to the easement language at issue, we agree with Target that D&H did not prove that the Environmental Parcel is wholly worthless. *E.g.*, *Teal Trading I*, 534 S.W.3d at 581 (concluding that trial court did not err in granting summary judgment in Champee Springs's favor on Teal Trading's affirmative defense of prohibition of use because Teal Trading did not come forth with any evidence to counter no-evidence motion filed by Champee Springs). The only evidence D&H presented to support its claim that Target's use of the Use Easement caused the Environmental Parcel to lose all value was the following testimony from Desai:

> Q. Okay. And if you were unable to even use this property for parking, is there any commercial use that you could think of that the property could be used for?
>
> A. I do not believe so.
>
> Q. And if you can't use it for -- even for parking, what is your opinion of the value of the property?
>
> A. It would not have value.
>
> Q. So, in essence, would it be worthless?
>
> A. Yes, it would be worthless.

A property owner, such as Desai, is qualified to testify to the value of his own property, so long as he testifies specifically to its market value, not "intrinsic or some other speculative value of the property." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155-56 (Tex. 2012). This requirement is generally met by asking the witness if he is familiar with the market value of his property. *Id.* Thus, under the Property Owner Rule, the witness's testimony must meet the same requirements as any other expert's testimony:

> Because property owner testimony is the functional equivalent of expert testimony, it must be judged by the same standards. Thus, as with expert testimony, property valuations may not be based solely on

a property owner's *ipse dixit*. An owner may not simply echo the phrase "market value" and state a number to substantiate his diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough. Of course, the owner's testimony may be challenged on cross-examination or refuted with independent evidence. But even if unchallenged, the testimony must support a verdict, and conclusory or speculative statements do not.

*Id.* at 159.

Here, Desai provided no supporting factual basis for his statement that the Environmental Parcel is worthless if the Use Easement is enforced. Desai did not discuss "market value"; nothing in his testimony shows that his value testimony was based on the market; and he did not testify that he was familiar with the market. *See id.* Thus, his valuation testimony amounts to mere *ipse dixit*, which is insufficient to support his claim that the Environmental Parcel is worthless. *See id.* Further, his testimony "provides only his guess as to his property's diminution in value, and such speculation will not support a judgment." *Id.* at 161.

We conclude that the trial court erred in declaring the Use Easement void and unenforceable as a prohibition of use.

### 3. *Target holds the Use Easement.*

In a final point, D&H contends that we may affirm the trial court's judgment on the theory that Target never acquired the Use Easement because the easement did not convey from Woodland Heights to Sawyer Heights, and thus, the easement could not have conveyed to Target. The trial court did not make any specific findings or conclusions in D&H's favor on this argument, but some of the trial court's

23

conclusions could be interpreted as implicitly supporting it. For example, the trial court concluded:

- An exception in a deed that lists an easement means the property conveyed is burdened by the easement. . . .

- The exception of the Easement in the deed from [Woodland Heights] to [Sawyer Heights] provided notice that [NOV] had access for the limited purpose of its remediation obligations. . . .

- An express exception in a deed of an easement controls over an implied transfer or assignment of an easement. . . .

To the extent that these conclusions indicate that the Sawyer Heights Deed shows that the Dominant Tract was burdened by the Access Easement, we agree. But to the extent these conclusions adopt D&H's argument that the Use Easement was not conveyed to Sawyer Heights, we disagree.

The Original Easement Agreement expressly dictates that the "rights granted and obligations imposed hereby shall run with the land" and are binding on NOV's and Woodland Heights' successors and assign as owners of the properties. "An easement in which the benefits are for a specific parcel of land, regardless of the identity of the owner, are easements appurtenant." *Machala v. Weems*, 56 S.W.3d 748, 754 (Tex. App.—Texarkana 2001, no pet.); *see Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex. 1962) (explaining that an easement appurtenant benefits the property to which it is attached; it cannot be separated from the owner's rights in the land, and it passes with the property). An easement appurtenant passes by a deed's use of the word "appurtenant," but such an easement usually passes even without such an express reference in the deed. *See Holmstrom v. Lee*, 26 S.W.3d 526, 531 (Tex. App.—Austin 2000, no pet.); *see also Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 700 (Tex. App.—San Antonio 2016, pet. denied) ("Therefore, any

24

appurtenance (benefit or burden) to the conveyed land passes to the grantee even if not specified.").

A warranty deed passes all the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed. *Day & Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 668 (Tex. 1990). The words "exception" and "reservation," though at times used interchangeably, each have their own separate meaning. *Klein v. Humble Oil & Refining Co.*, 67 S.W.2d 911, 915 (Tex. App.—Beaumont 1934), *aff'd*, 86 S.W.2d 1077 (Tex. 1935). A reservation is the creation of a new right in favor of the grantor, while an exception operates to exclude some interest from the grant. *Wenske*, 521 S.W.3d at 806 (discussing exception); *Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987) (discussing reservation). Thus, to retain an appurtenant right, such as an easement, "a grantor must specifically reserve it for himself." *Aery*, 493 S.W.3d at 700.

In today's case, the Sawyer Heights Deed conveyed from Woodland Heights, as grantor, to Sawyer Heights, as grantee, "all rights and appurtenances thereto in anywise belonging to Grantor." At the time of the conveyance, the Use Easement was an easement appurtenant belonging to Woodland Heights. Thus, the Use Easement passed to Sawyer Heights through the express language of the deed, unless there are reservations or exceptions reducing the estate conveyed.

The Sawyer Heights Deed states that the conveyance is "subject to" the items listed in the "Permitted Exceptions." One of the items listed in the Permitted Exceptions is the Easement Agreement. D&H asserts that the Sawyer Heights Deed thereby "excepted" the Use Easement, meaning that Woodland Heights retained the Use Easement and did not convey it with the Dominant Tract. *See generally Magee*

25

*v. Hambleton*, No. 02-08-00441-CV, 2009 WL 2619425, at *3-5 (Tex. App.—Fort Worth Aug. 25, 2009, pet. denied) (mem. op.).

We disagree that, by conveying the Dominant Tract subject to the "permitted exceptions," including the Easement Agreement, Woodland Heights sought to reserve the Easement Agreement for itself. As explained above, the Easement Agreement contained two easements: (1) the Use Easement, benefitting the Dominant Tract and burdening the Environmental Parcel; and (2) the Access Easement, benefitting the Environmental Parcel and burdening the Dominant Tract. In other words, the Easement Agreement included a benefit—the Use Easement— that was transferred with the land, and a burden—the Access Easement—that the land was "subject to." By including the Easement Agreement in the Permitted Exceptions, Woodland Heights notified Sawyer Heights that the Dominant Tract was burdened by the Access Easement. *See, e.g.*, *id.* at *5 (holding that deed conveying property subject to an ingress-egress easement showed existence of easement burdening conveyed property); *see also Moctezuma v. Upton*, No. 14-94-00009-CV, 1995 WL 681294, at *2 (Tex. App.—Houston [14th Dist.] Nov. 16, 1995, writ denied) (op. on reh'g, not designated for publication) (holding that deed conveying property "subject to" road easement established existence of easement encumbering grantor's interest).

Here, the Sawyer Heights Deed does not expressly reserve the Use Easement; thus, it was conveyed with the Dominant Tract to Sawyer Heights. In turn, Sawyer Heights conveyed the Use Easement to Target via the Target Deed, which conveyed the Dominant Tract, "together with and including . . . all hereditaments, appurtenances, *easements* and right of way thereunto belonging or in any way appertaining . . . ." (Emphasis added). Target thus holds the Use Easement.

\*       \*       \*

26

Accordingly, we hold that the Use Easement is not void and unenforceable for any of the reasons D&H asserted and that Target acquired the Use Easement through the various conveyances at issue in this case. The Use Easement is valid and enforceable by Target, and we sustain Target's first sub-issue.

## B. Did the Option survive the tax foreclosure sale?

The trial court also determined that the tax foreclosure sale extinguished the Option. Target contends that the trial court erred in so holding.

1. *Target has not established that it was entitled to notice of the tax foreclosure suit, and it received notice of the tax foreclosure sale.*

Target's first argument rests on due process concerns related to tax foreclosure cases involving lienholders. A record lienholder possesses a legally protected property interest. *Sec. State Bank & Trust v. Bexar County*, 397 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied) (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983); *Sadeghian v. City of Denton*, 49 S.W.3d 403, 406 (Tex. App.—Fort Worth 2000, pet. denied)). Before "any action that will affect a protected property interest, due process requires 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Texas courts generally hold that a lienholder must be joined in a delinquent tax suit to be bound by it. *See id.* at 722; *Mem'l Park Med. Ctr., Inc. v. River Bend Dev. Grp., L.P.*, 264 S.W.3d 810, 814 (Tex. App.—Eastland 2008, no pet.); *Jordan v. Bustamante*, 158 S.W.3d 29, 38 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). A trial court's judgment foreclosing a tax lien is valid against the parties joined in the suit, but lienholders

who are not joined are not bound by the judgment.[6] *E.g.*, *Sec. State Bank & Trust*, 397 S.W.3d at 722; *John K. Harrison Holdings, LLC v. Strauss*, 221 S.W.3d 785, 791 (Tex. App.—Beaumont 2007, pet. denied); *Jordan*, 158 S.W.3d at 38-39. Thus, when a record lienholder receives no notice of the delinquent tax suit or subsequent tax sale, due process requires that the purchaser at the tax sale takes the property subject to the lienholder's lien. *See Sec. State Bank & Trust*, 397 S.W.3d at 724-25; *Strauss*, 221 S.W.3d at 791; *Jordan*, 158 S.W.3d at 38-39.

An option agreement, however, "does not pass title or convey an interest in property." *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 605 (Tex. 2016) (per curiam). Instead, it "merely gives the optionee the option to purchase property or execute a lease within a certain time period." *Id.* Because an option holder does not hold a legally protected interest in the property, the due process concerns applicable to lienholders do not arise when an option holder is not notified of a delinquent tax suit. Thus, Target's reliance on cases involving lienholders is misplaced. And Target has not cited, nor have we found, any cases holding that due process rights are implicated when the holder of a purchase option in real property does not receive notice of a tax foreclosure suit.

Moreover, the trial court found that Target received notice of the tax sale. Target contends that the notice it received was inadequate, citing Tax Code section 33.94. However, as D&H points out, this provision of the Tax Code is found in Subchapter E, which applies only to a city or county seizure of real property by tax warrant, which is an administrative process. *See* Tex. Tax Code §§ 33.91-.95

---

[6] Additionally, when the taxing authority has actual or constructive notice that non-parties have title or ownership, a tax foreclosure judgment is not binding on those non-parties. *See Coakley v. Reising*, 436 S.W.2d 315, 318 (Tex. 1968) ("A judgment by a taxing agency is not binding upon a person who is not a party to the suit, when his ownership is evidenced by an unrecorded document, if the taxing authority has actual or constructive notice of his title or ownership.").

("Subchapter E. Seizure of Real Property"). Section 33.94 is inapplicable to the tax foreclosure suit that occurred in today's case. Target has not established otherwise that the notice that it received was inadequate.

> 2. *MRH's acquisition of the Environmental Parcel was not subject to Target's Option.*

According to the Tax Code, a tax sale deed:

> vests good and perfect title in the purchaser or the purchaser's assigns to the interest owned by the defendant in the property subject to the foreclosure, including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption, the terms of a recorded restrictive covenant running with the land that was recorded before January 1 of the year in which the tax lien on the property arose, a recorded lien that arose under that restrictive covenant that was not extinguished in the judgment foreclosing the tax lien, and each valid easement of record as of the date of the sale that was recorded before January 1 of the year the tax lien arose.

Tex. Tax Code § 34.01(n). Thus, a purchaser at a tax sale takes title to the property interest without encumbrances other than those detailed in the above provision, such as a recorded restrictive covenant. *See id.* Target does not explain how the Option fits into any of these categories, but instead claims that the interest D&H received after the tax foreclosure sale was limited by or subject to Target's property interest in the Option. But an option holder does not possess a property interest. *See N. Shore Energy*, 501 S.W.3d at 605. And Target did not establish that the Option is a type of encumbrance or interests identified in section 34.01 as surviving a tax foreclosure sale.

In Texas, a covenant runs with the land if (1) it touches and concerns the land, (2) it relates to a thing in existence or specifically binds the parties and their assigns, (3) it is intended by the original parties to run with the land, and (4) the successor to the burden has notice. *Lennar Homes of Tex. Land & Constr., Ltd. v. Whitely*, 625

S.W.3d 569, 577-78 (Tex. App.—Houston [14th Dist.] 2021, no pet. h.) (citing *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987)). Only covenants running with the land bind the heirs and assigns of the covenanting parties; personal covenants do not. *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355-56 (Tex. App.—Eastland 2006, no pet.). Here, the original option appears to have been a personal covenant, as it benefitted only the original optionee, Woodland Heights. However, the parties amended the option to expressly state that it "shall run with the land" and inure to the benefit of any subsequent owner of the Dominant Tract. Memorandums of the Original Option and the Amended Option were duly recorded in the Harris County real property records, providing notice of the burden. We thus presume that the Option was a covenant running with the land. *Cf., e.g.*, *MJR Oil & Gas 2001 LLC v. AriesOne, LP*, 558 S.W.3d 692, 700-04 (Tex. App.—Texarkana 2018, no pet.) (right of first refusal in certain oil and gas leases was a covenant running with the land).

However, as is relevant here, only recorded *restrictive* covenants survive a tax foreclosure sale. Tex. Tax Code § 34.01(n). A "restrictive covenant" is a negative covenant that limits permissible uses of land. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279 (citing Restatement (Third) of Prop.: Servitudes § 1.3(3) (2000)). In contrast, an affirmative covenant requires the covenantor to do something. Restatement (Third) of Prop.: Servitudes § 1.3(2) (2000). A purchase option that runs with the land is an affirmative covenant because it requires the covenantor to do something to invoke the right or rights existing by the option—i.e., convey title to the property on certain conditions. *See id.* cmt. d, illus. 3-4.

By stating that only recorded restrictive covenants survive a tax foreclosure sale, the legislature may have intended to exclude other types of covenants, such as an option to purchase running with the land. *Cf. United Servs. Auto. Ass'n v. Brite*,

215 S.W.3d 400, 403 (Tex. 2007) (applying doctrine of *expressio unius est exclusio alterius*—the inclusion of a specific limitation excludes all others—to construe unambiguous jurisdictional statute). Although the doctrine of *expressio unius est exclusio alterius* "is simply an aid to determine legislative intent, not an absolute rule in interpreting statutes," *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 895 (Tex. 2000), Target does not suggest any alternative construction of this statute in its briefing.

The tax foreclosure sale in today's case conveyed "good and perfect title" to MRH Properties of the interest owned by Biloxi Bacon, subject only to those encumbrances specified by section 34.01(n). MRH then conveyed its interest to D&H. Target has not established that the purchase option in today's case is a restrictive covenant or otherwise fits into the categories enumerated in section 34.01(n). Thus, Target has not shown that the trial court erred in concluding that the purchase option was extinguished by the tax foreclosure sale.

We overrule Target's second sub-issue.

## C.    Is Target entitled to judgment on its claims?

In its third sub-issue, Target contends that we should render judgment on all its claims and remand with instructions. Because we have overruled Target's sub-issue relating to the Option, Target is not entitled to specific performance of the purchase option. However, our resolution of Target's easement issues in its favor requires us to consider whether it is entitled to judgment on its claims for breach of the Easement Agreement and declaratory relief, as well as its request for attorney's fees and a permanent injunction.

31

1.   *Target established that D&H breached the Easement Agreement.*

Target pleaded a claim for breach of the Easement Agreement, seeking as damages the amount it paid to have the fence around the Environmental Easement removed during the pendency of this suit. To establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff suffered damages due to the breach. *Arshad v. Express Bank, FSB*, 580 S.W.3d 798, 804 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Smith v. Smith*, 541 S.W.3d 251, 259 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The Easement Agreement grants Target the right to use the Environmental Parcel's surface for the limited purposes of ingress and egress; parking; landscaping; and recreational and signage uses. The agreement, as amended, also gives Target the right to pave the Environmental Parcel. The Easement Agreement expressly prohibits D&H from using the Environmental Parcel in a manner that interferes with Target's Use Easement or Target's operations on, or use of, the Dominant Tract.

Target's uncontroverted evidence showed that D&H violated these provisions by building a fence around the Environmental Parcel in January 2019. D&H built the fence by driving post holes into the parking lot pavement and placing fence posts along the Environmental Parcel's boundary. The fence did not include an opening or gate. Target established that, once the fence was constructed, Target could no longer use the Environmental Parcel for any of the Use Easement's purposes. A property owner may not interfere with an easement holder's right to use the servient estate for the easement's purposes. *Severance*, 370 S.W.3d at 721. Target established that D&H breached the Easement Agreement by interfering with its right to use the Environmental Parcel for the easement's purposes.

Target likewise established that its out-of-pocket costs to remove the fence were $1,319.04. D&H did not controvert the amount or the reasonableness of the costs. Accordingly, Target established conclusively all the elements of its breach of contract claim, and it is entitled to judgment on that claim.

However, the Easement Agreement does not provide for the award of attorney's fees. Thus, Target's only avenue for recovery of attorney's fees based on its breach of contract claim is Civil Practice and Remedies Code section 38.001. But because D&H is a limited liability company, Target may not recover attorney's fees for its breach of contract claim under section 38.001. *See, e.g.*, *Vast Constr. LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 728 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452-55 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).[7]

2.      *Target is entitled to declaratory relief.*

In its live pleading, Target sought the following declarations:

i. Woodland Heights conveyed to Sawyer Heights the Easement, which is appurtenant to the Dominant Tract acquired by Sawyer Heights, when Woodland Heights conveyed the Dominant Tract to Sawyer Heights on or about October 29, 2004;

ii. Sawyer Heights conveyed to Target the Easement, which is appurtenant to the substantial portion of the Dominant Tract acquired by Target, when Sawyer Heights conveyed a substantial portion of the Dominant Tract to Target on or about October 29, 2004;

iii. Target, as the Dominant Tract owner, owns, holds, and is the grantee and beneficiary of the Easement under the Easement Agreement;

---

[7] Although the current version of Civil Practice and Remedies Code section 38.001 permits the recovery of attorney's fees against a limited liability company for a breach of contract claim, this version did not take effect until September 1, 2021, after this lawsuit was tried. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (eff. Sept. 1, 2021).

iv. The default judgment issued in *Biloxi Bacon Enterprise Corp. v. Woodland Heights Development L.P.*; in Suit No. 2017-39201; in the 164th Judicial District Court of Harris County, Texas, is void and invalid as to Target;

v. The default judgment did not divest Target of the Easement under the Easement Agreement; and

vi. D&H's construction of a fence obstructed, encroached upon, and interfered with Target's use of the Easement for the purposes set forth in the Easement Agreement.

Target reiterated its request for declaratory relief at the bench trial:

We've requested a declaratory judgment stating that default judgment was void, limiting D&H's access per the terms of the easement agreement and finding that a fence, a building and a parking lease would all interfere with Target's use of the easement.

Target contends that it conclusively proved its entitlement to this declaratory relief. For the reasons explained above, we agree that Target demonstrated its entitlement to declaratory judgment on requests i, ii, iii, and vi, which relate to its rights under the Easement Agreement.

We next consider whether Target established entitlement to its requested declarations iv and v, which relate to the 2017 default judgment Biloxi Bacon obtained against Woodland Heights purporting to terminate the Easement Agreement. Target contends on appeal that it is entitled to these declarations because the Biloxi Bacon default judgment is void for lack of subject matter jurisdiction and, if it is not void, it is not enforceable against Target because Target did not participate in or have notice of the lawsuit. We agree that the Biloxi Bacon default judgment is not enforceable against Target.

In the June 2017 Biloxi Bacon lawsuit, Biloxi Bacon requested a declaration that Woodland Heights abandoned the Use Easement by forfeiting its right to do business in Texas and ceasing to exist. But, as noted above, Woodland Heights

conveyed the Dominant Tract to Sawyer Heights in 2004; Sawyer Heights then conveyed this tract to Target. Thus, Woodland Heights no longer held any interest in the Dominant Tract, and it was no longer a party to the Easement Agreement and did not hold the Use Easement because these covenants ran with the Dominant Tract.

Section 37.006 of the Uniform Declaratory Judgments Act (the "UDJA") requires that, when "declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem. Code § 37.006(a). Undisputedly, Target was not a party to the Biloxi Bacon lawsuit. "A declaration does not prejudice the rights of a person not a party to the proceedings." *Id.* Texas courts, including this court, have universally enforced this provision. *See, e.g.*, *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004) (parties not joined in declaratory judgment suit are not bound by declarations arising therefrom); *In re Estate of Nunu*, 542 S.W.3d 67, 77-78 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("McCulloch and Burt are not parties to this action, so they would not be bound by any such declaration."); *Marhaba Partners Ltd. P'ship v. Kindron Holdings, LLC*, 457 S.W.3d 208, 212 n.5 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("The District is not a party to this case; therefore, its rights are not prejudiced by the trial court's declaration in favor of Kindron."); *In re Corcoran*, 401 S.W.3d 136, 139 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding?) (holding trial court could issue declaratory judgment adjudicating homeowners' rights between certain neighbors without joining all neighbors governed by same homeowners' association because trial court's judgment would resolve live controversy between neighbors who were parties to suit and would not affect rights of neighbors who were not parties to suit).

Accordingly, Target's rights under the Easement Agreement were not prejudiced by the trial court's declarations in the Biloxi Bacon lawsuit. Target established its entitlement to declarations iv and v.

The UDJA authorizes the award of attorney's fees to a party in a declaratory judgment action if the court determines the award to be equitable and just and the party presents evidence that the fees are reasonable and necessary. *See* Tex. Civ. Prac. & Rem. Code § 37.009. A party need not prevail on all declaratory judgment claims to be awarded attorney's fees under the UDJA. *See Trevino v. City of Pearland*, 531 S.W.3d 290, 300 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("An award of attorney's fees under section 37.009 is within the discretion of the trial court and does not depend on a finding that a party substantially prevailed."). Because the trial court erroneously denied Target declaratory relief, we remand to the trial court to consider what, if any, attorney's fees the trial court determines are equitable and just. *See Lance v. Robinson*, 543 S.W.3d 723, 746 (Tex. 2018) (remanding for reconsideration of attorney's fees award in light of disposition of appeal).

3. *Target is entitled to injunctive relief.*

Target also pleaded a claim for injunctive relief to enforce the Use Easement. The trial court denied Target's request for permanent injunctive relief based on its conclusion that the Use Easement was void and unenforceable. As we have determined that the Use Easement is not void and that Target holds this easement, Target is entitled to injunctive relief to enforce its rights under this easement. *E.g.*, *Still v. Eastman Chem. Co.*, 170 S.W.3d 851, 855 (Tex. App.—Texarkana 2005, no pet.) (explaining that a fee owner may not interfere with easement holder's "reasonable use and enjoyment of that easement" and that "rights of easement holder may be protected by injunction"). However, this court may issue writs of injunction

36

only as necessary to enforce our own jurisdiction. *See* Tex. Gov't Code § 22.221(a); *In re Laski Plus of Tex., P.A.*, No. 14-13-00036-CV, 2013 WL 816674, at *1 (Tex. App.—Houston [14th Dist.] Mar. 5, 2013, orig. proceeding) (mem. op.). Target's request for injunctive relief does not fall within these parameters.

We therefore remand to the trial court for entry of a permanent injunction in Target's favor. *See Vance v. Popkowski*, 534 S.W.3d 474, 477, 481 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (remanding for entry of injunctive relief); *Peter & Camella Scamardo FLP v. 3D Farms*, No. 10-15-00163-CV, 2016 WL 102633, at *5 (Tex. App.—Waco Jan. 7, 2016, pet. denied) (mem. op.) (remanding to trial court with instructions to enter a mandatory injunction in appellant's favor).

## Conclusion

The Use Easement is not void and unenforceable and Target holds this easement. D&H breached the Easement Agreement by constructing a fence around the Environmental Parcel, and we render judgment in Target's favor against D&H for that breach and damages of $1,319.04. We additionally render declaratory judgment in Target's favor, consistent with this opinion. However, we affirm that portion of the judgment declaring the Option extinguished. We remand to the trial court for: (1) entry of a permanent injunction in Target's favor consistent with this opinion; and (2) consideration of the issue of attorney's fees under the UDJA in light of our disposition of this appeal.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Wise, Jewell, and Poissant.

37